NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0571n.06
Filed: September 23, 2008

No. 07-3560

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SHELDON GORDON, et al.,

      Plaintiffs,

v.

DAVID DADANTE, et al.,
      Defendants.

_____

On Appeal from the United States District Court for the Northern District of Ohio

H&R BLOCK FINANCIAL ADVISORS, INC.,

      Defendant-Appellant,

v.

MARK DOTTORE,

      Receiver-Appellee.

_____/

BEFORE:    BOGGS, Chief Judge; and RYAN and COLE, Circuit Judges.

RYAN, Circuit Judge.  This appeal involves the arbitration rights of H&R Block Financial Advisors, Inc. (HRBFA), a stakeholder-defendant in a complex securities action. In the course of the litigation, HRBFA attempted to arbitrate certain claims relating to the margin debt held in its accounts and moved the district court to issue a stay of this lawsuit pending arbitration. The district court denied the motion to stay, ruling that HRBFA had waived its right to arbitration by virtue of its participation in the litigation. The court also enjoined HRBFA from pursuing arbitration. HRBFA now appeals the judgment.

**I.**

On November 21, 2005, Sheldon Gordon filed suit against David Dadante and various investment funds Dadante managed (Funds). Gordon's complaint also named four brokerage firms, one of which was HRBFA, as stakeholder-defendants in the suit.

Gordon's complaint alleged that Dadante solicited approximately $50 million from various individuals and used the money to fund a classic "Ponzi" scheme, whereby original investors were enticed to invest even greater sums upon receiving very high returns on their original investments. The "high returns," of course, were really new investment capital contributed by subsequent investors. Dadante allegedly paid $26 million to some of the early investors in this way. Gordon's complaint also alleged that Dadante fabricated account statements, manipulated accounts, and engaged in numerous acts of self-dealing.

As part of the alleged "Ponzi" scheme, Dadante opened numerous accounts at several brokerage firms, including HRBFA, and through these accounts purchased a considerable amount of stock for the Funds he was managing. When Dadante opened an account with HRBFA, he signed an Account Agreement that, among other things, permitted HRBFA to grant margin loans on the accounts; provided HRBFA with a general lien and security interest in all the assets in the accounts for the margin loans; and subjected all claims arising out of the relationship to mandatory arbitration.

The Funds' primary asset is common stock in a company called Innotrac Corporation, of which the Funds own approximately $10 million worth of shares. Dadante purchased stock in Innotrac, Rambus, Inc., and Taser International, Inc., through the HRBFA account on its margin borrowing privileges. Consequently, the shares are encumbered by hundreds of thousands of dollars in margin debt.

Shortly after Gordon filed this lawsuit, the district court appointed Mark Dottore as the Receiver of the Funds to collect and preserve assets, to investigate investor losses, and to identify the victims of Dadante's alleged fraud. On the same day, the court also enjoined the stakeholder-defendants, including HRBFA, from liquidating any of the Funds' assets without the permission of the court, reasoning that immediate liquidation of the shares would be severely detrimental to the Funds' investors. Nevertheless, the Receiver instructed HRBFA to sell all of the Rambus and Taser stock held in one of its accounts and requested that HRBFA transfer the proceeds from the sale to an account at another firm. HRBFA resisted this instruction by filing a motion to quash the transfer. HRBFA requested the court to issue an order preventing the Receiver from forcing the transfer on the ground that it would negatively impact HRBFA's security interest in the assets. The district court denied the motion.

In the meantime, Gordon amended his complaint by adding all the investors in the Funds as plaintiffs in the suit. On May 1, 2006, HRBFA responded by filing its answer, expressly reserving its right to compel arbitration.

On July 17, 2006, a group of the Funds' investors, who were added as plaintiffs in the amended complaint, filed a separate lawsuit against two fellow investors, Frank and Mike Regalbuto. See Small v. Regalbuto, No. 1:06-cv-01721 (N.D. Ohio July 17, 2006). The Small complaint alleged that the Regalbutos made false representations to the other investors about the Funds and breached their fiduciary duty to the others whom the Regalbutos solicited to invest millions of dollars in the Funds. In October 2006, the Regalbutos filed an answer denying the allegations in the Small complaint, filed a third-party complaint against all of the stakeholders, including HRBFA, as well as various other

defendants, alleging that all the named defendants committed fraud. In response, HRBFA filed a motion to compel arbitration. The district court then stayed the Small lawsuit indefinitely and has never ruled on HRBFA's motion.

Between the time the complaint in the Gordon case was filed and the time the Regalbutos filed their third-party complaint in the Small case, HRBFA had been in communication with the Receiver, providing him with information about the accounts on an informal basis. However, when the Regalbutos alleged a claim against HRBFA, it ceased providing information to the Receiver. This prompted the Receiver to pursue formal discovery, which HRBFA promptly opposed.

Meanwhile, HRBFA had filed a motion in the underlying Gordon case requesting the court to order that the proceeds generated from the earlier sale of stock be applied against the margin debt. HRBFA argued that the money was generating significantly less interest than the debt on the margin loan was accumulating. The district court granted this motion and applied the total amount from the sale, $670,162.33, towards reducing the margin debt on HRBFA's accounts.

On December 5, 2006, the Receiver filed a notice to depose William Salem who was employed by HRBFA, but was not personally a party to the suit. HRBFA responded by filing a motion to quash the notice of deposition, arguing that the Receiver was attempting to use the discovery process to identify potential claims, rather than investigating actual claims. HRBFA also stated in its motion that it would litigate any claims in arbitration if claims were actually brought against it. The district court denied this motion.

On January 19, 2007, another group of the plaintiffs in the Gordon case moved the court for leave to file a second amended complaint to assert claims similar to those alleged

by the plaintiffs in the Small case, against, inter alia, HRBFA and the other stakeholder-defendants. However, the court never ruled on this motion and no claims have ever been filed against HRBFA in this case.

On February 1, 2007, HRBFA initiated NASD arbitration against the Funds and Dadante, asking for a judgment award in the amount of $814,379.79, based upon the outstanding margin debt, with interest, as well as related costs and expenses. HRBFA also moved the court to stay all adversarial proceedings against it in the Gordon case pending resolution of the arbitration. The Receiver responded by filing a "Motion to Show Cause and for Preliminary Injunction" seeking to enjoin the NASD proceedings.

The district court granted the motion, ruling sua sponte that HRBFA waived its right to arbitration by failing to raise it earlier and by its participation in the litigation. The court also concluded that the NASD arbitration would impermissibly interfere with the Receiver's mandate. The court enjoined the NASD arbitration and denied HRBFA's motion to stay. HRBFA now appeals this judgment.

**II.**

We review de novo a district court's determination that a party has waived its right to arbitration. See O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 355 (6th Cir. 2003). Contractual arbitration provisions are treated like other contractual provisions and such agreements are enforced, unless the parties waive their right. A party may explicitly waive its right to arbitration, or may waive its right by failing to assert it or by participating in litigation to such an extent that its actions are "completely inconsistent with any reliance" on this right and cause the opposing party to suffer prejudice. Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat, 289 F.3d 434, 438 (6th Cir. 2002).

At the same time, "'[t]here is a strong presumption in favor of arbitration[] and . . . waiver of the right to arbitration is not to be lightly inferred.'" O.J. Distrib., 340 F.3d at 355-56 (quoting Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993)).  The Supreme Court has stated that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration[] . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Two leading cases in this circuit finding waiver of the right to arbitrate by action or inaction of the parties in litigation are General Star and O.J. Distributing.  In General Star, the plaintiff sued a Romanian state-owned insurance company for breach of contract and unjust enrichment.  When the defendant did not file a response to the complaint, the plaintiff obtained a default judgment.  Nearly a year after the judgment was entered, the defendant filed a motion to vacate claiming that the trial court did not have jurisdiction to enter the judgment, in part, because the insurance contract provided for mandatory arbitration.  The court denied the motion, and on appeal, we concluded that the defendant waived its right to arbitrate because it had been idle for seventeen months during which time the plaintiff incurred significant litigation expenses and that it wasn't until after the default judgment had been entered that it sought to assert this right.  Gen. Star, 289 F.3d at 438.

In O.J. Distributing, the plaintiff sued the defendant for breach of a distributorship agreement.  Prior to the initiation of the suit, the defendant had engaged in negotiations with the plaintiff and at the same time denied the existence of the agreement.  Almost three months after the suit was filed, the defendant sent the plaintiff two letters demanding

arbitration based on a provision in the contract requiring mandatory arbitration within 180 days after the events giving rise to the claim. A month later, the defendant sent the plaintiff a third letter restating its intent to compel arbitration and advising the plaintiff that it was willing to continue discussions with the plaintiff regarding a settlement of their claims. The plaintiff filed a motion for default judgment to which the defendant responded that he had not been properly served and filed a cross-motion to dismiss the suit and stay the action pending arbitration. The defendant initiated arbitration a month later, and the court stayed the case until the arbitration concluded. The arbitrator ruled that the 180-day period had expired and dismissed the plaintiff's claim, prompting the district court to then confirm the arbitrator's decision.

We reversed the district court's judgment, holding that the defendant waived its right to arbitration by having actual knowledge of the arbitration provision, denying the existence of the agreement, and negotiating with the plaintiff for fifteen months—most of which occurred prior to the plaintiff filing suit—before initiating arbitration. O.J. Distrib., 340 F.3d at 358.

### III.

The district court relied on three circumstances in the course of the Gordon litigation by which, according to the court, HRBFA indicated that it did not rely on its right to arbitration, and thereby waived its right: 1) HRBFA's failure to seek arbitration after the district court's order restricting liquidation of the Funds' assets; 2) HRBFA's active participation in the Gordon litigation by filing a motion to quash the transfer of assets and arguing that it had a security interest in the assets of the Funds' accounts by virtue of its margin debt; and 3) HRBFA's June 2006 motion to apply cash proceeds, where it argued

that the Account Agreement entitled it to receive the money from the sale to be applied against the margin debt. The district court concluded that because the two motions invoked the same Account Agreement, involved the same margin debt, and pertained to the same security interest in the assets of the Funds' accounts, HRBFA's request for judicial relief constituted a waiver of its right to arbitrate its claims against the Receiver. We disagree.

The instances relied upon by the district court do not reflect conduct by HRBFA that is completely inconsistent with its reliance on its contractual right to arbitration. First, and perhaps most importantly, there have been no substantive claims directed against HRBFA in this lawsuit; it was named a defendant merely as a stakeholder. We do not believe that HRBFA had an affirmative obligation to invoke its contractual right to arbitration before a claim was filed against it. Second, this is not a case like General Star where the party claiming a right to arbitrate has been unresponsive to the lawsuit and sat idly by, neither answering the complaint nor seeking arbitration. And this is also not a case like O.J. Distributing, where the party has parried the attacks of the opposing party by denying a duty to arbitrate until a motion for default judgment was filed against it and then claiming a right to arbitrate in the hope of receiving more favorable treatment.

This case has a complex history. HRBFA was a mere stakeholder in the underlying action and did not file any substantive claims against any other party in the suit nor did any other party in the suit file claims against it. HRBFA merely attempted to defend and protect its rights under the Account Agreement. Its procedural maneuvers to do so were not completely inconsistent with its reliance on the right to arbitration and it had no obligation

to invoke its right to arbitration earlier.  We do not think HRBFA waived its right to arbitration.

**IV.**

For these reasons, we **REVERSE** the district court's judgment granting the Receiver's motion to enjoin arbitration of its dispute with HRBFA and **REMAND** this case to the district court with instruction to dissolve the injunction which presently precludes the arbitration proceedings from going forward.