RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0148p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

JOHNSON ASSOCIATES CORPORATION; T.
CHANTAL INTERNATIONAL LIMITED,
                    *Plaintiffs-Appellees,*

                                                          No. 10-6468

            *v.*

HL OPERATING CORP., dba Hartmann,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:09-cv-1206—John T. Nixon, District Judge.

Decided and Filed:  May 23, 2012

Before:  NORRIS, CLAY, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Samuel L. Felker, Kathryn Hannen Walker, BASS, BERRY & SIMS PLC, Nashville, Tennessee, for Appellant.  Stephen H. Price, Erika R. Barnes, STITES & HARBISON PLLC, Nashville, Tennessee, for Appellees.

_____

## OPINION

_____

GRIFFIN, Circuit Judge.   Defendant-appellant HL Operating Corporation ("Hartmann") appeals from the district court's order denying its motion to compel arbitration on the basis that it waived its right to enforce an arbitration clause against plaintiffs-appellees Johnson Associates Corporation ("Johnson") and T. Chantal International Limited ("T. Chantal") in their suit for breach of contract and unjust enrichment.  We affirm.

1

I.

This case involves a dispute over Hartmann's contract with Johnson and T. Chantal to manufacture Hartmann's luggage lines. Plaintiffs filed suit against Hartmann on December 22, 2009, seeking damages for breach of contract based on a "Sourcing Agreement" between the parties and claiming that Hartmann was unjustly enriched. Hartmann filed an answer and asserted a counterclaim for breach of contract. A case management conference was held. Thereafter, the parties engaged in a judicial settlement conference, held settlement discussions, and exchanged multiple offers from approximately the middle of April 2010 through the middle of June 2010 with the assistance of a magistrate judge. These efforts were unsuccessful. On July 1, 2010, the magistrate judge assisting with the settlement proceedings returned the case file to the magistrate judge otherwise handling the case because "it now appears that there is very little chance of resolution at this stage in the proceedings."

That same day, Hartmann filed a motion to continue the trial and to modify the case management order, which at the time required the parties to complete written discovery and fact witness depositions by August 15, 2010. The district court denied Hartmann's motion. Hartmann then served plaintiffs with interrogatories, requests for production of documents, and a request for admissions on July 2, 2010, and July 16, 2010; and plaintiffs served Hartmann with their discovery requests on July 13, 2010. On July 21, 2010, Hartmann noticed eight depositions; those depositions, however, were later postponed. The parties then filed a joint motion to modify the case management order to make the responses to the discovery requests due on August 26, 2010, and the court entered an order to that effect on August 12, 2010.

On August 23, 2010, just three days before the newly agreed-upon discovery deadline, Hartmann notified plaintiffs that it intended to exercise its right to arbitrate the dispute as provided by paragraph 13(a) of the Sourcing Agreement. Hartmann requested a response by August 24, 2010, and notified plaintiffs that in the event they did not agree to arbitrate, Hartmann would file a motion to compel arbitration. Hartmann also stated that "[i]t is our position that no discovery should be had until the Court rules on such a

motion. Consequently, we will grant you an indefinite extension to respond to any of our outstanding discovery . . . . We ask that you do the same for Hartmann." When plaintiffs failed to respond, Hartmann filed a motion to compel arbitration on August 25, 2010.

On August 26, 2010, plaintiffs served their discovery responses on Hartmann in accordance with the deadline. They produced 1,151 pages of responsive documents and provided a 4.11 gigabyte hard drive containing responsive information. Plaintiffs then continued to seek discovery from Hartmann while the motion to compel arbitration was pending. On September 1, 2010, plaintiffs' counsel wrote to Hartmann's counsel: "Regardless of its motion to dismiss or stay the litigation pending arbitration, which Plaintiffs oppose, Hartmann is still required to comply with outstanding court orders regarding discovery, . . . . Specifically, Plaintiffs intend to continue to take depositions in this matter." As a result, when Hartmann served written discovery responses and documents on September 15, 2010, it stipulated that "it [wa]s doing so under objection and Hartmann does not agree that its response to these requests constitutes any waiver of its right to arbitrate this dispute."

The district court held a hearing on Hartmann's motion to dismiss or compel arbitration in mid-November. In an opinion dated November 30, 2010, the court held that Hartmann had waived its right to compel arbitration because Hartmann "moved for and was granted an extension of time within which to file an Answer"; "asserted ten affirmative defenses and a counterclaim"; "engaged in a judicial settlement conference and informal efforts to resolve the case"; "both unilaterally and jointly with Plaintiffs moved for adjustments of the Case Management Order"; "served . . . discovery requests"; and prejudiced Plaintiffs because "[w]hile litigating in this court for most of a year, Plaintiffs have participated in scheduling, requested discovery materials and prepared discovery responses" that "[they assert] . . . will not be fully transferrable to an arbitration process." Hartmann timely appeals.

II.

"We review a district court's denial of a motion to compel arbitration *de novo*." *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (citing *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006)).

III.

Hartmann makes two arguments on appeal.  First, Hartmann contends that it could not have waived its right to arbitration because the Sourcing Agreement contains an explicit no-waiver provision:  "No waiver by either party of any provision of this Agreement or of any breach or default shall constitute a continuing waiver of such provision or of any other provisions of this Agreement."  Because Hartmann raised this issue in its reply to its motion to compel arbitration below, and the district court failed to address it, Hartmann claims that the district court's ruling must be vacated and the matter remanded for further consideration.  Plaintiffs, on the other hand, assert that Hartmann did not properly raise the issue in its reply below, and that even if it did, the fact that the district court failed to address the argument does not mean that the court committed any error in making its determination that Hartmann waived its right to arbitration.  We consider each of these arguments in turn.

Plaintiffs argue that Hartmann made only a "vague" reference in passing in its reply brief, without explanation or legal citation, that it could not waive the specific arbitration provision as a result of the general no-waiver provision in the Sourcing Agreement.  This vague reference, they contend, was insufficient to raise the issue before the district court and thus did not preserve it for appeal.  We disagree.  Because the issue of waiver was first raised in plaintiffs' response, Hartmann's reply was the first and only opportunity it had to address the issue.  Moreover, although Hartmann's argument lacked legal citation, it was not vague or made merely in passing.  Hartmann argued that:

> In addition to the facts that Plaintiffs have not and will not suffer any prejudice and that Hartmann has not taken any actions "completely inconsistent" with arbitration, Hartmann cannot be found to have waived

its right because the parties expressly agreed that neither party could waive any provision of the Contract between them. Section 13(e) of the agreement between the parties states plainly that "[n]o waiver by either party of any provision of this Agreement or any breach or default shall constitute continuing waiver of such provision or of any other provisions of this Agreement." Docket No. 1-1 at § 13(e). As such, not only did Plaintiffs expressly agree to arbitrate this dispute, but they also agreed that the actions they now claim constitute waiver would not in fact act as a waiver of the arbitration provision.

This was sufficient to preserve the issue for our review.

However, even though the no-waiver clause argument is preserved, Hartmann wrongly concludes that the district court's failure to address the issue requires remand. "[T]he presence of [a] 'no waiver' clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration." *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 86 (2d Cir. 1998), *cert. denied*, 528 U.S. 1058 (1999). This makes sense because "to allow the 'no waiver' clause to preclude a finding of waiver would permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of the proceedings" and allow parties to "test[] the water before taking the swim" by delaying assertion of their right to arbitration until the litigation is nearly complete. *Id.* (citation and internal quotation marks omitted); *accord Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 452-53 (3d Cir. 2011); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 348-49 (5th Cir. 2004). Given that the alleged no-waiver provision in the Sourcing Agreement was not potentially determinative, Hartmann's argument that the district court's failure to address the issue requires remand is without merit.

Second, Hartmann argues that the district court erred in concluding that Hartmann waived its right to arbitration based on its participation in the litigation. Although it has long been settled that a party can waive its contractual right to arbitration, *see Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318 (6th Cir. 1950), "because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). We have explained that "a party may waive an agreement to arbitrate

by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Hurley*, 610 F.3d at 338 (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003)); *see Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002).

In this case, the parties' arguments focus on our unpublished decision in *Manasher v. NECC Telecomm.*, 310 F. App'x 804 (6th Cir. 2009). There, we held that the defendant "waived whatever right to arbitrate it may have had by failing to plead arbitration as an affirmative defense and by actively participating in litigation for almost a year without asserting that it had a right to arbitration" because that "conduct was 'completely inconsistent with [any] reliance [on the right to arbitration]' and caused the plaintiffs to suffer prejudice through unnecessary delay and expense." *Id.* at 806 (quoting *Gen. Star Nat'l Ins.*, 289 F.3d at 438). Hartmann contends that our determination in *Manasher* that a defendant's failure to raise an arbitration clause in its answer is inconsistent with its reliance on the right to arbitrate is suspect because a defendant is not required by Federal Rule of Civil Procedure 8(c) to plead arbitration as an affirmative defense. Hartmann also asserts that *Manasher* is distinguishable from the instant case because that case included motions to certify the class and to amend the complaint, and none of the litigation activities in this case were as extensive or laborious. We find Hartmann's arguments unavailing.

Regardless of whether a defendant is required to raise arbitration as a defense under Rule 8(c), a defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate. The filing of an answer is, after all, the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue. Indeed, as a practical matter, an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit. It is therefore unsurprising that defendants routinely raise the right to arbitration

in their answer, whether it is technically required by Rule 8 or not. *See Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985) ("Although [defendant] did not move for a stay pending arbitration until approximately eight months into the litigation, in its answer to the original complaint, [defendant] did seek to have the action dismissed because the dispute was covered by a valid and enforceable arbitration clause thereby putting [plaintiff] on notice as to its desire to arbitrate the matter."); *Hilti, Inc. v. Oldach*, 392 F.2d 368, 371 (1st Cir. 1968) (noting that "defendant's answer, in its special defense, served notice on plaintiff of the arbitration defense"); *see also Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 n.5 (5th Cir. 1970) ("Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver.").

Hartmann is, of course, correct that the litigation in *Manasher* was more significant than the litigation in this case. In *Manasher*, the suit proceeded for over a year before the issue of arbitration was raised, and, during that time, there was a motion to certify the class and a motion to amend the complaint. Here, in contrast, the case had progressed only eight months before Hartmann raised its right to arbitration, and the parties' prior motions addressed only settlement, scheduling deadlines, and discovery requests. But the fact that this case involved less litigation than in *Manasher* is not dispositive. And, in our view, Hartmann's actions were also completely inconsistent with any reliance on its right to arbitrate because Hartmann: failed to raise arbitration in its answer, *see Manasher*, 310 F. App'x at 806; asserted a counterclaim for breach of contract, *see, e.g.*, *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 310 F. App'x 858, 859 (6th Cir. 2009) (noting that the defendant "participated in litigation when it filed an answer and counterclaims"); and actively scheduled and requested discovery, including depositions, rather than moving to compel arbitration following the end of formal settlement discussions, *cf. Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) (noting that the defendant "promptly moved" for arbitration following failure of settlement).

Hartmann's citations to decisions from other jurisdictions do not convince us otherwise. *J. & S. Constr. Co., Inc. v. Travelers Indem. Co.*, 520 F.2d 809 (1st Cir. 1975), is not helpful to Hartmann because in that case the court based its conclusion that the defendant did not waive its right to arbitration on the lack of prejudice to the plaintiff. *Id.* at 809-10 ("This ruling is supported by the record, there having been no showing of prejudice."). *Tenneco Resins, Inc.* and *Hilti, Inc.* are similarly off target because in those cases, unlike here, the right to arbitration was raised in each of the defendants' respective answers. *See* 770 F.2d at 420; 392 F.2d at 371. And *Carcich v. Rederi A/B Nordie*, 389 F.2d 692 (2d Cir. 1968), is likewise inapplicable because in that case arbitration was raised "at an early date and continuously asserted," while in this case, it was not raised until eight months into the litigation. *Id.* at 695. The only case Hartmann relies on that is arguably close is *Am. Dairy Queen Corp. v. Tantillo*, 536 F. Supp. 718 (M.D. La. 1982), and we find that court's "substantial invocation of the litigation process" analysis unpersuasive in light of our "completely inconsistent" actions test. *See id.* at 722.

We are also unpersuaded by Hartmann's assertion that it did not act completely inconsistently with any reliance on its right to arbitration because failing to assert arbitration as an affirmative defense, participating in only a "minimal" amount of litigation while mostly attempting to settle the case, and filing an answer and counterclaim are individually insufficient to support such a finding. Although Hartmann cites some authority in support of these assertions, *see Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) ("Attempts at settlement . . . are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration."); *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 698 (9th Cir. 1986) ("[T]he bare fact that [a party] failed to raise an affirmative defense is inadequate by itself to support a claim of waiver of arbitration."); *Crossville Med.*, 310 F. App'x at 859 (holding that the mere filing of answer and counterclaims were not inconsistent with defendant's right to arbitrate), the problem with Hartmann's argument is that, regardless of whether each of these circumstances is insufficient to show that Hartmann acted completely

inconsistently with its right to arbitration, they may well be sufficient when considered together.[1]  We hold that in this case they are.

This leaves the second part of the waiver inquiry:  prejudice.  "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense."  *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991); *see, e.g.*, *Manasher*, 310 F. App'x at 806.  Prejudice can also be found where a party has gained a strategic advantage by obtaining something in discovery that would be unavailable in arbitration.  *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991).  Here, the district court concluded that plaintiffs were prejudiced by unnecessary delay and expense because "the right to arbitrate was not asserted for eight months, during which motions were filed, requests for discovery materials were made and responses were prepared, and a judicial settlement conference was held."  It emphasized that "[a] considerable amount of time and resources has been spent in pursuing this matter in court, and Plaintiffs assert that the fruits of their efforts will not be fully transferrable to an arbitration process abroad that may delay resolution of this case even further."  We substantially agree with the district court.

Hartmann argues that the district court erred by relying on the "time and resources" spent in litigation to conclude that plaintiffs were prejudiced by Hartmann's delayed assertion of its right to arbitration.  As support for this argument, Hartmann cites our statement that "delay alone, regardless of its length is not enough [to establish prejudice]," *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (citation and internal quotation marks omitted), and the Fifth Circuit's statement that "pretrial expense and delay–unfortunately inherent in litigation–without more, do not constitute prejudice

---

[1]Hartmann has also taken at least one of these statements out of context.  In *Fisher*, the Ninth Circuit's full statement was:  "*Absent a showing of prejudice* by the Fishers, the bare fact that Becker failed to raise an affirmative defense is inadequate by itself to support a claim of waiver of arbitration. *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 889 (2d Cir. 1985)."  791 F.2d at 698 (emphasis added).  Thus, the case does not actually support Hartmann's contention.

sufficient to support a finding of waiver." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995)  However, this is not a case involving delay alone, or even delay and the inherent pretrial expense referred to in *Leadertex*. This is a case where, in addition to an eight-month delay and expenses involved with numerous scheduling motions and court-supervised settlement discussions, plaintiffs also engaged in discovery.  The combination of all of these factors caused plaintiffs to suffer "actual prejudice." *Hurley*, 610 F.3d at 338.

Hartmann resists this conclusion, pointing to the Fifth Circuit's statement in *Tenneco Resins* that "when only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice to the [opposing party]."  770 F.2d at 421.  But that statement does not describe this case.  Here, plaintiffs produced 1,151 pages of responsive documents and a 4.11 gigabyte hard drive full of responsive information.  *Cf. Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 207 (4th Cir. 2004) (finding no prejudice where the written discovery was "limited"); *Leadertex*, 67 F.3d at 26 (finding no prejudice where the only documents produced were unnecessary copies of twenty-three dye orders).  Moreover, plaintiffs represented to the district court that they engaged in more discovery than would be permitted in arbitration; and, contrary to Hartmann's contention, the district court implicitly credited that representation.

Hartmann also intimates that it cannot be responsible for plaintiffs' discovery expenses because the metadata on the hard drive provided by plaintiffs shows that the information was saved on August 24, 2010, one day after Hartmann notified plaintiffs of its intent to arbitrate.  But this does not benefit Hartmann either.  If anything, the fact that the responsive information was saved to the disk only one day after Hartmann notified plaintiffs of its intent to arbitrate confirms that plaintiffs were prejudiced; after all, it is exceedingly unlikely that plaintiffs would have gathered all of that responsive material, or even a substantial portion of it, in the hours between when it received notice of Hartmann's intent to arbitrate on August 23, 2010, and its saving of the material to

the disk on August 24, 2010.  Because Hartmann's actions were completely inconsistent with any reliance on its right to arbitration, and because Hartmann's belated assertion of that right caused plaintiffs actual prejudice in the form of unnecessary delay and expense, we hold that Hartmann waived its right to arbitration.

## IV.

For these reasons, we affirm the judgment of the district court.