MAASSEN, Justice,
with whom FABE, Chief Justice, joins, dissenting.
The determinative issue in this ease is whether Citibank’s claim for attorney’s fees under Alaska Civil Rule 82 is “closely related” to Janet Hudson’s claim in response: that Citibank’s attorney’s fees claim is greatly inflated, violates the Unfair Trade Practices and Consumer Protection Act (UTPA), and entitles Hudson to statutory remedies. I believe the attorney’s fees claim and the UTPA-based response to it are indeed closely related. For that reason, and because the language of the parties’ contract has no effect on the court’s authority to find that a party waived arbitration through its use of the judicial process, I would hold that Citibank, by deliberately bringing its attorney’s fees claim in Alaska’s courts and pursuing it to judgment, waived its right to arbitrate Hudson’s factual and legal challenges to the claim’s basis and amount. I therefore dissent from the court’s holding today.
A. Hudson’s UTPA Claim Based On Citibank’s Rule 82 Claim Is Closely Related To Citibank’s Rule 82 Claim.
Citibank’s complaint against Hudson demanded not only “[a] money judgment in the amount of $ 24[,]170.24” but also “Alaska Rule of Civil Procedure 82 Attorney[’]s fees” in an unspecified amount.[1] After secuiing a default, Citibank filed an affidavit in which it claimed $ 4,834.05 in “actual attomey[’]s fees”; it noted that this amount exceeded the ten percent of the judgment allowed by the Rule 82 schedule and therefore requested that lesser amount—$ 2,417.02—instead. There is no question but that Citibank intentionally put both its entitlement to Rule 82 attorney’s fees and their amount at issue in its lawsuit and thereby waived the right to arbitrate the Rule 82 claim.[2]
Hudson did not appear in the collection suit. She did not object to the fees award *54 until later, when she filed her class-action complaint alleging that the fees claimed by Citibank, in her case and others, exceeded the amounts allowed by Rule 82 and violated the UTPA. That her objections were raised in a later lawsuit does not matter to whether the relevant claims are “closely related,” as the court agrees:[3] In determining whether the party demanding arbitration has already indicated an intent to litigate the same legal and factual issues, “[i]t is irrelevant that the prior litigation occurred as part of a separate action or in a different court.”[4] What matters, in the words of the court today, is whether the attorney’s fees claim and the response to it are “so closely related as to form what is really a single controversy” because they involve the “same facts and legal issues”;[5] in other words, whether the claims are “intertwined” and the “fact finder would necessarily have to resolve fact issues common to both.”[6]
The court’s application of this test today goes astray, in my view, when it contrasts “[t]he evidence and legal theories included in the two different claims”—the debt collection action and the UTPA claim—and concludes that they “have little if any overlap.”[7] The court is contrasting the wrong two claims. Citibank did not merely sue to collect a debt; it also made a claim for Rule 82 attorney’s fees, which—as the court points out—had a wholly separate evidentiary and legal basis.[8] The proper focus of today’s inquiry is on the overlap between Citibank’s claim for Rule 82 attorney’s fees and Hudson’s UTPA claim raised in response to it.[9] The evidentiary overlap between these two claims is close to complete;[10] a “fact finder would necessarily have to resolve fact issues common to both,”[11] i.e., whether Citibank misstated its fees. A victory for Hudson in her later lawsuit would impugn the legitimacy of Citibank’s judgment in its earlier lawsuit. Indeed, the two claims are inextricably intertwined even as the court describes them:
The essence of Hudson’s UTPA claim is that Citibank’s attorneys performed relatively little work to obtain a default judgment on a simple debt action, yet because the attorneys were being compensated under a 20% contingency fee agreement, the attorney’s fees requested and awarded under Rule 82(b)(1) were disproportionately higher than the hourly fee they would have charged, making them unreasonable.[12]
One simply cannot articulate Hudson’s UTPA claim outside the context of Citibank’s Rule 82 attorney’s fees claim.[13]
*55 Although a challenge to the basis or amount of a Rule 82 attorney’s fees claim can never be unanticipated in Alaska practice, we can perhaps assume that Citibank did not anticipate a challenge based specifically on the UTPA,[14] But I caution against deferring too much to the defenses a litigant anticipated when we are deciding whether its claim is closely related to the other party’s response. The court today observes that “Citibank’s decision to litigate its simple debt-collection action does not convey that it also intended to forgo arbitration on a different, more complex UTPA claim.”[15]1 doubt that the plaintiff in a consumer debt-collection case will ever be found to have subjectively anticipated a complex defense to its claim, no matter what that defense might be and how “closely related” it appears to an objective eye. Sometimes, as in these cases of consumer default, the plaintiff likely expects no defense at all. But I suggest that whether the plaintiff anticipated the defense to its claim should not have the significance the court gives it; much more important is whether the plaintiff intended to litigate its claim. By filing its claim in court the plaintiff invites a response in the same forum.[16] Citibank’s claim for Rule 82 attorney’s fees was plainly inconsistent with an intent to arbitrate either its right to those fees or the reasonableness of those fees.
Nor do I believe that the closely related claim and response lost their relatedness because Hudson chose to file her action on behalf of a proposed class. The proposed class consists of persons like Hudson “against whom defendants obtained a default judgment including attorney’s fees since July 15, 2009.” Had the collections cases been defended, Citibank could reasonably have expected a challenge to the amount of fees from each of these class member-defendants; it waived its right to arbitrate the Rule 82 claim in each individual case and as to each potential class member. That Hudson seeks to consolidate the cases for decision adds procedural efficiencies this court has long encouraged;[17] it does not dilute the claims’ *56 relatedness. In other words, the fact that all the class members’ claims are closely related to the attorney’s fees claims on which they hinge cannot mean that none of them are. And the fact that Citibank waived arbitration as to each one of them individually cannot mean that it reserved arbitration as to all of them as a class.
B. The Language Of The Arbitration Agreement Does Not Restrain The Court’s Application Of Waiver Principles.
The court today relies heavily on the language of the parties’ Arbitration Agreement to conclude that Citibank retained the right “to seek arbitration on claims distinct from its original debt collection action and its request for attorney’s fees” regardless of waiver principles that would otherwise apply.[18] But parties cannot contract away the courts’ exercise of the inherent authority to find that the right to arbitrate has been waived by the pursuit of a judicial remedy.
Federal courts are appropriately skeptical of “no waiver” clauses in arbitration agreements. “[T]he presence of [a] ‘no waiver’ clause does not alter the ordinary analysis undertaken to determine if a party has waived its light to arbitration.”[19] “This makes sense because ‘to allow the “no waiver” clause to preclude a finding of waiver would permit parties to waste scarce judicial time and effort and hamper judges’ authority to control the course of the proceedings’ and allow parties to ‘test[ ] the water before taking the swim’ by delaying assertion of their right to arbitration until the litigation is nearly complete.”[20]
Citibank chose to file its debt-collection action in Alaska’s courts, where Civil Rule 82 and the efficient default-judgment process allowed it to increase Hudson’s consumer debt by what it claimed to be thousands of dollars in attorney’s fees. It opted against arbitration, where its right to Rule 82 fees would be at best problematic.[21] When ehal- *57 lenged to Hudson’s instant suit, Citibank demanded that the attorney’s fees issue it had already litigated to an easy judgment in Alaska’s courts be arbitrated instead. But under the “closely related” test of waiver as the court explains it today, I would hold that Citibank is not entitled to relitigate the issue in a new forum under a new set of rules; the parties’ contract has no effect on this conclusion. I therefore dissent.

. I describe the background of only Hudson’s case here; Cynthia Stewart's ran a parallel course and is analytically indistinguishable.

. Citibank contends that it "would have had the right to pursue its fees” in arbitration; it chose to litigate them in court instead.

. Op. at 50 ("[TJhe filing of separate actions alone does not make the claims unrelated.'').

. PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 108 n.2 (2d Cir. 1997); see also In re Enron Corp., 364 B.R. 489, 512 (Bankr. S.D.N.Y. 2007) (“A party waives the right to invoke arbitration where it has previously litigated the same legal and factual issues even if that litigation occurred as part of a separate action or in a different forum.”).

. Op. at 50 (quoting PPG Indus., Inc., 128 F.3d at 110).

. Id. (quoting Owens & Minor Med., Inc. v. Innovative Mktg. & Dist. Servs., 711 So.2d 176, 177 (Fla. Dist. App. 1998)).

. Op. at 51.

. See Op. at 51-52, 52-53.

. The court’s attempt to distinguish Midwest Window Systems, Inc. v. Amcor Indus., Inc., 630 F.2d 535 (7th Cir. 1980), is thus irrelevant, in my view, because whether Hudson's claim is related to any aspect of Citibank’s debt-collection action other than its Rule 82 claim is beside the point. Op. at 52-53. I find support in the court's discussion of Blackburn v. Citifinancial, Inc., No. 05AP-733, 2007 WL 927222 (Ohio App. Mar. 29, 2007), which the court distinguishes because "[t]he same evidence would have been relevant to both claims.” Op. at 52 n.58. That is the situation here.

. As the court describes it, Hudson’s UTPA claim "arose from the bank's fee agreement with its lawyers and post-litigation attorney’s fees motions”—in other words, Hudson’s UTPA claim "arose from” Citibank's Rule 82 claim. Op. at 51.

. Op. at 51 (quoting Owens & Minor Med., 711 So.2d at 177).

12. Op. at51n.46.

. The court's reliance on three unpublished cases that "consider[ed] similar fact patterns” is unpersuasive. Op. at 51. The cases are similar in that they involved consumer protection suits following debt collection actions, but, unlike here, *55 they did not also include a claim in the original action that turned on facts common to the consumer protection suit. See Garcia v. Weltman, Weinberg & Reis Co. of Mich., No. 2:13-cvl4362, 2014 WL 1746522, at *2, *5 (E.D. Mich. Apr. 30, 2014) (finding "the issues at play in the state court [debt-collection] litigation ... fundamentally different from Plaintiff's unfair debt collection practice claims” based on debt collection practices taken outside of court); Funderburke v. Midland Funding, L.L.C., No. 12-2221-JAR/DJW, 2013 WL 394198, at *2, *7 (D. Kan. Feb. 1, 2013) (finding the new claim arbitrable where the first claim was for debt collection and the later claim alleged that the defendant had no authority to collect the debt and the attempt to do so was tortious and otherwise unlawful, issues "not litigated in [the first] action” and dependent on facts not at issue there); Fields v. Howe, No. IP-01-1036-C-B/S, 2002 WL 418011, at *7 (S.D. Ind. Mar. 14, 2002) (concluding that "the tort and other claims Fields pursues in federal court are not the same claims [the defendant] lodged in state court,” though apparently rejecting waiver as a defense categorically, noting in dicta that the card member agreement would have allowed arbitration "even if the cases were one and the same”).

.Even this is questionable, given our longstanding application of the UTPA to debt-collection practices. See, e.g., State v. O’Neill Investigations, Inc., 609 P.2d 520, 523-36 (Alaska 1980) (rejecting constitutional challenges to the UTPA and applying it to independent debt-collection practices).

. Op. at 51.

. This also differentiates other cases on which the court relies, in which it is a defendant who acquiesces in a court proceeding and later invokes arbitration when the plaintiff expands the theory or scope of the claims at issue. See Plaintiffs' S’holders Corp. v. S. Farm Bureau Life Ins. Co., 486 Fed.Appx. 786, 790 (11th Cir. 2012) ("[W]here a plaintiff files an amended complaint that 'unexpectedly changes the scope or theory of the plaintiff's claims,” fairness dictates that a defendant’s prior waiver of arbitration be nullified and the right to compel arbitration revived.” (quoting Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011))); Cabinetree of Wis. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 389, 390 (7th Cir. 1995) (finding presumptive waiver of arbitration when defendant to a contract claim first sought removal to federal court and later "dropped a bombshell into the proceedings” by seeking arbitration instead, but acknowledging that the defendant might be allowed to rescind the waiver under certain "extraordinary circumstances"); Op. at 50-51 n.44. The same fairness concerns are not implicated in a case like this one—at least not in favor of the party demanding arbitration—where it is that party who opted for court in the first place.

. See State, Commercial Fisheries Entry Comm’n v. Carlson, 65 P.3d 851, 872 (Alaska 2003) ("Class action suits, in which the result for one becomes the result for many in the same legal predicament, are necessary to avoid a multiplier *56 ty of duplicative lawsuits."); Turner v. Alaska Commc'ns Sys. Long Distance, Inc., 78 P.3d 264, 268 (Alaska 2003) (observing that "the aggregation of small individual claims is an important use of the class action device, since without it, 'aggrieved persons may be without any effective redress’ ” (quoting Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980))); Crawford & Co. v. Vienna, 744 P.2d 1175, 1177 (Alaska 1987) (''The purpose of a class action is to afford numerous individuals united in interest an efficient means to adjudicate claims.”).

. Op. at 50; see also id. at 53 ("Therefore, under the totality of the circumstances—particularly given the language of the arbitration provision and the unrelatedness of the two sets of litigation— we hold that Citibank did not waive its right to arbitrate Hudson’s UTPA attorney's fees claim and affirm this aspect of the superior court’s decision.” (emphasis added)).

. Johnson Assoc. Corp. v. HL Operating Corp., 680 F.3d 713, 717 (6th Cir. 2012) (quoting S &R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 86 (2d Cir, 1998)); see also Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 452 (3d Cir. 2011) (holding "that the clause in the [agreement] allowing either party to seek injunctive relief until the arbitration award is rendered d[id] not override the applicability of the ... analysis which examines whether a party, by its participation in litigation, has waived its right to invoke arbitration”); Republic Ins. Co. v. PAICO Receivables, LLC, 383 F.3d 341, 348-49 (5th Cir. 2004) ("The inclusion of a ‘no waiver’ clause in a contract does not eliminate the district court’s inherent power to control its docket. In this case the Settlement Agreement’s 'no waiver’ clause is not sufficient to overcome the district court's exercise of its inherent authority in light of Republic’s extensive use of the judicial process.”); Thomas Oehmke & Joan Brovins, Causes of Action Involving Arbitrable Disputes, 32 Causes of Action 2d 385 § 33 (2006 & Oct. 2016 Update) (discussing Republic Ins.); Jay Grenig, 1 Alt. Disp. Resol. § 23.32 (3d ed. 2015) (emphasizing as "important” that "[a] 'no waiver' clause in an arbitration provision of a settlement agreement is not sufficient to overcome a court’s exercise of its inherent authority to find that a party has waived its right to arbitrate” (citing Republic Ins., 383 F.3d 341 (5th Cir. 2004))).

. Johnson Assoc., 680 F.3d at 717 (alteration in original) (quoting S & R Co., 159 F.3d at 86).

. According to Citibank, it could recover Rule 82 fees in arbitration because the agreement allows it to recover "court costs or any other fees as allowed by law.” According to Hudson, it is Citibank’s position that South Dakota law applies, and Citibank acknowledges that an "award of attorney’s fees is not the norm” in South Dakota but argues that they are permitted. Regardless of the forum and the applicable law, Citibank admits that "there may [have been] a difference in the amount of fees Citibank might ... have recovered if it pursued Hudson's undisputed debt in arbitration.”