RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0347p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

BORROR PROPERTY MANAGEMENT, LLC,

*Plaintiff-Appellee*,

*v.*

No. 20-3146

ORO KARRIC NORTH, LLC; ORO KARRIC SOUTH, LLC;
ORO SILVERTREE, LLC; ORO SPRINGBURNE, LLC,

*Defendants-Appellants*.

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:19-cv-04375—Algenon L. Marbley, District Judge.

Decided and Filed: October 29, 2020

Before: DAUGHTREY, DONALD, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** David M. Scott, Lucas K. Palmer, Krista D. Warren, BRENNAN, MANNA & DIAMOND, LLC, Columbus, Ohio, for Appellants. James E. Arnold, Damion M. Clifford, Gerhardt A. Gosnell II, ARNOLD & CLIFFORD LLP, Columbus, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge. It is the rare federal complaint that is not preceded by an exchange of letters between the parties. Sometimes the letters identify common ground, more often they eschew it. Sometimes they are conciliatory, more often they are accusatory. Either way, their purpose is to help frame the parties' dispute, posturing it either for settlement or litigation. But those correspondence are not equivalent to formal litigation. They are neither

pleadings nor representations in court.  And free of those burdens, parties often posture their claims with loose rhetorical flair better utilized outside the courtroom.

Yet today, one party seeks to raise the stakes for this familiar practice.  Although the parties agree that their underlying contract affords each of them the opportunity to invoke arbitration, Plaintiff believes Defendants waived that right through their pre-trial "posturing" correspondence.  The district court agreed and denied Defendants' motion to compel arbitration.  Because Defendants' pre-trial communications were neither inconsistent with its arbitration right nor prejudicial to Plaintiff, they did not waive that right.  We accordingly reverse the decision of the district court and remand the case for further proceedings.

## BACKGROUND

Oro Karric North, LLC and its sister entities (collectively "Oro") contracted with Borror Property Management, LLC for Borror to manage Oro's residential apartments.  Each management contract included the following arbitration provision: "If either party shall notify the other that any matter is to be determined by arbitration," the parties would proceed to arbitration unless they first resolved the dispute amongst themselves.

A dispute did arise, the nature of which is not relevant today, except to say that it resulted in Borror's ceasing to manage Oro's properties.  Oro responded by letter asserting that Borror was in breach of the parties' contracts.  In view of that alleged breach, Oro planned "to proceed directly to litigation in either state or federal court," as the contracts, Oro asserted, "do not limit litigation exclusively to arbitration."  Nonetheless, Oro asked Borror to notify it within six days if Borror preferred arbitration.  Otherwise, Oro would assume that Borror wanted to proceed with litigation.

Borror chose litigation.  A week after receiving Oro's letter, Borror filed a complaint in federal court asserting its own breach of contract claims.  Rather than filing an answer or another responsive pleading, Oro moved to compel arbitration.  The district court, however, denied the motion, holding that Oro had waived its contractual right to arbitration through its pre-litigation conduct.  *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, No. 2:19-cv-04375, 2020 WL 469881, at *2 (S.D. Ohio Jan. 29, 2020).  Invoking its appeal rights under the Federal Arbitration

Act, 9 U.S.C. § 1 *et seq.*, Oro timely appealed the district court's denial of its motion to compel arbitration. The district court in turn granted Oro's motion to stay proceedings pending appeal.

## ANALYSIS

We review the denial of a motion to compel arbitration de novo. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 716 (6th Cir. 2012). A frequent dispute in this setting is whether the arbitration clause itself is valid and, if so, applicable to the facts at hand. *See, e.g.*, *Russell v. Citigroup, Inc.*, 748 F.3d 677, 681 (6th Cir. 2014) (discussing the scope of an arbitration agreement). But here, the parties assume the clause's validity and applicability. They instead dispute whether Oro waived its otherwise enforceable right.

Federal law looks favorably upon arbitration. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting that the Federal Arbitration Act "establishes a liberal federal policy favoring arbitration agreements" (internal quotations and citation omitted)). In view of that federal prerogative, the "waiver of the right to arbitration is not to be lightly inferred." *Johnson Assocs.*, 680 F.3d at 717 (citation omitted).

A party implicitly waives its arbitration right, we have said, when (1) the party's acts are "completely inconsistent" with its arbitration right and (2) the party's conduct is prejudicial to an opposing party—for example, when the party significantly delays asserting its arbitration right. *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 827–28 (6th Cir. 2015) (citation omitted); *see also Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (explaining that waiver may result from a party acting inconsistently with its arbitration rights and significantly delaying the assertion of those rights). Both elements must be present to establish waiver. *Shy*, 781 F.3d at 828 ("Both inconsistency and actual prejudice are required . . . .").

1. Applying this arbitration-friendly framework here reveals that Oro did not waive its right to arbitration. The main point of contention is whether Oro's pre-complaint, litigation-threatening letter amounted to conduct "completely inconsistent" with its arbitration rights. As every civil litigator would likely acknowledge, the exchange of letters between parties as a prelude to more formal dispute resolution is a time-honored tradition. The letters serve a variety of purposes, from identifying a party's concerns to foreshadowing litigation to articulating a path

to settlement. Sometimes, they might achieve all three. A threat of litigation, for example, might in fact be pure puffery, a boastful way to articulate one's grievances—legal, equitable, or otherwise—with the goal of compelling a favorable resolution. *See* Bret Rappaport, *A Shot Across the Bow: How to Write an Effective Demand Letter*, 5 J. Ass'n Legal Writing Dirs. 32, 33–34 (2008) (discussing the importance of pre-litigation resolutions and noting that "settlement negotiations typically begin with a strategy that is the legal equivalent of a shot across the bow— a demand letter"). In that respect, these letters are often more rhetorical art than legal science.

Because we cannot know a party's true intentions in crafting a pre-litigation posturing letter, we are understandably reluctant to give those letters the same legal force as we might give a party's representations in other settings. *See Highlands Wellmont Health Network v. John Deere Health Plan, Inc.*, 350 F.3d 568, 574 (6th Cir. 2003) (holding that defendant's pre-litigation letter "amounts to nothing more than the typical posturing that may occur where one party is attempting to 'stare down' the other party in the hope that the other party will simply give up") (citation omitted). Compare, for instance, the flexible nature of pre-filing correspondence with the strict rigors of legal proceedings. Once litigation commences, a party typically is bound by its action, whether it be a statement in a pleading, *see Kay v. Minacs Grp. (USA), Inc.*, 580 F. App'x 327, 331 (6th Cir. 2014) ("[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." (quoting *Ferguson v. Neighborhood Hous. Servs.*, 780 F.2d 549, 551 (6th Cir. 1986))), an admission during discovery, *see* Fed. R. Civ. P. 36(b) (noting that facts admitted pursuant to a Rule 36 discovery request are "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended"), or an argument to the court by its counsel, *see Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (noting that "judicial estoppel bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding"); *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) (recognizing that an attorney's statement qualifies as a binding judicial admission when it is "deliberate, clear, and unambiguous"). So too for a party's post-complaint conduct with respect to its arbitration rights. *See Johnson Assocs.*, 680 F.3d at 718 (noting that a party's actions were completely inconsistent with its arbitration rights partly because it did not raise its arbitration rights in its responsive pleading). But giving *pre-litigation* communications the same

legal force would morph the routine party-to-party letter into one laden with dramatic legal consequences.

We decline to impose such consequences here. Oro's letter, in essence, asserted that Borror was in breach of contract and suggested that formal legal proceedings—either litigation or arbitration—might be necessary. While the letter suggested the ultimate path arguably was Borror's to choose, we do not view Oro's routine pre-filing correspondence as "completely inconsistent" with the company's arbitration rights. Oro, in fact, identified in its letter the possibility of arbitration, even if it otherwise indicated a preference for litigation. And as soon as Borror filed its complaint, Oro moved to compel arbitration.

Any other conclusion would raise the stakes considerably for pre-filing communications. It would leave parties with little room to maneuver as they seek to work out their differences short of litigation. The inevitable result would be to make pre-filing settlement elusive, an unfortunate development not only for parties, which often settle disputes to avoid litigation risk, but also for the courts, which historically have counted on the resolution of disputes to conserve limited judicial resources. *See Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlement of disputes without litigation."); Margaret M. Cordray, *Settlement Agreements and the Supreme Court*, 48 Hastings L.J. 9, 36 (1996) (noting that settlement "decreases the expense and risk of litigation for parties" and "enables courts to conserve scarce judicial resources and to reduce their backlog").

2. Even if we were to find Oro's letter entirely inconsistent with its arbitration rights, it is difficult to see how Borror was materially prejudiced by Oro's actions. In the arbitration setting, prejudice tends to arise only after the wheels of justice have begun to turn. For example, prejudice can result from a party spending substantial time or money litigating a case before an arbitration right is invoked. *See, e.g.*, *Johnson Assocs.*, 680 F.3d at 719 ("Prejudice . . . can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991))); *see also Hurley*, 610 F.3d at 338–40 (holding that parties waived their right to arbitrate where they filed multiple motions, requested to change venue and forum, and delayed compelling arbitration for over two years until the district court

rendered an unfavorable decision); *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (holding that a party waived its right to arbitrate by failing to assert its right until 17 months after it received notice of a complaint). Or it can arise when one party uses litigation to gain the upper hand before invoking its arbitration rights. *Johnson Assocs.*, 680 F.3d at 720. An opposing party, for instance, may be prejudiced by a harmful piece of evidence unearthed in discovery which would otherwise not have been discovered during arbitration. *Id.* (noting the "strategic advantage" from "obtaining something in discovery that would be unavailable in arbitration"); *cf. Aqualucid Consultants, Inc v. Zeta Corp.*, 721 F. App'x 414, 418 (6th Cir. 2017) (holding that defendants did not waive their right to arbitration because in the absence of "discovery or any significant advancement in litigation," plaintiffs failed to "quantify any prejudice incurred or point to any time or resources exhausted that would not be transferable to the arbitration process").

Those prejudicial hallmarks are absent here. Borror filed its lawsuit a week after Oro sent its letter. Apart from filing its motion to compel arbitration, Oro made no other filings, nor did it delay resolving the parties' dispute. In other words, other than Borror's opting to respond to Oro's motion, Oro's actions cost Borror nothing—neither time nor money, advantage nor disadvantage. To be sure, Borror did file a lawsuit, likely in response to Oro's letter. But nothing forced Borror to do so. Borror could have stood pat. Or it could have invoked its contractual right to arbitration. Once a lawsuit arrived on Oro's doorstep, it did invoke that shared right, without otherwise protracting the litigation. We see no prejudice to Borror in this setting.

3. Borror resists this conclusion by resisting our legal framework. According to Borror, a showing of prejudice is not required where Oro, says Borror, expressly (rather than impliedly) waived its arbitration right. It makes some sense, as Borror maintains, to distinguish between an implied and express waiver. For the former, we must determine whether we should *infer* a waiver based on a party's actions (or inactions). *See Gen. Star Nat'l Ins. Co.*, 289 F.3d at 438 (reciting the familiar standard that "a waiver of the right to arbitration is 'not to be lightly *inferred*'" (citation omitted and emphasis added)). And where a party expressly waives its arbitration right, there is no need to interpret whether its actions were "completely inconsistent"

with one another.  *See Gilmore v. Shearson/Am. Express, Inc.*, 811 F.2d 108, 112 (2d Cir. 1987) (noting that the plaintiff need not show prejudice as "no ambiguity exists because there was an express waiver").

That said, perhaps because our arbitration cases speak almost uniformly of waiver in implied terms, we have never expressly held in this context that a prejudice requirement attaches only to an implied waiver.  *See, e.g.*, *Shy*, 781 F.3d at 828 (referring to the common implied waiver standard and requiring "actual prejudice" to find waiver).  True, Borror reminds us, we said in *Gordon v. Dadante* that a party "may explicitly waive its right to arbitration."  294 F. App'x 235, 238 (6th Cir. 2008).  But *Gordon* is a non-binding, unpublished opinion.  And more than that, the authority it relies on *does* require a showing of prejudice.  *See id.* (citing *Gen. Star Nat'l Ins. Co.*, 289 F.3d at 438, which discusses waiver through the lens of completely inconsistent actions).  A second case, *Highlands Wellmont Health Network*, is published, and it arguably suggests that both express and implied waiver apply to arbitration clauses.  350 F.3d at 574 (stating "there is no evidence that [plaintiff] expressly waived arbitration" and that the court could not "infer a waiver of arbitration").  But *Highlands* did so in a "drive-by" manner, with no explanation as to how an express waiver standard might differ from implied waiver.  *See id.*; *cf. Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (noting in the jurisdictional setting that "[w]e have described such unrefined dispositions as 'drive-by jurisdictional rulings' that should be accorded 'no precedential effect'" (citation omitted)).

While Borror's proposed legal framework may have merit, its argument fails here either way, as Oro did not expressly waive its arbitration rights.  Nothing in Oro's letter expressly disavowed its right to arbitration.  Yes, the letter did indicate Oro was planning to litigate.  But plans can change.  And generally speaking, pre-filing threats are not laden with legal implications, for the reasons already described.  Even where they might be, Oro's abstruse posturing statement is not the kind that should be read as forever relinquishing its arbitration rights.  That, coupled with federal policy favoring arbitration when ambiguity exists, confirms that a waiver did not occur here.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

## CONCLUSION

We **REVERSE** the judgment and **REMAND** the case for further proceedings.