**XL CAPITAL, LTD., Petitioner–Appellant,**

v.

**William KRONENBERG III, Frank A. Piliero and David M. Rosenberg, Respondents–Appellees.**

**Docket No. 04–5774.**

United States Court of Appeals, Second Circuit.

Aug. 18, 2005.

David G. Januszewski, Cahill Gordon & Reindel LLP, New York, NY, for Appellants.

Harris N. Cogan (Stephen J. Meyer, on the brief), Blank Rome LLP, New York, NY, for Appellee.

Present: POOLER, SOTOMAYOR, Circuit Judges, and KORMAN, Chief District Judge.*

**SUMMARY ORDER**

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Petitioner-appellant XL Capital, Ltd. ("XL"), appeals from a judgment of the district court denying XL's motions to stay arbitration before the American Arbitration Association ("AAA") and to compel referral of the dispute to Ernst & Young LLP ("E&Y") for resolution. We assume the parties' familiarity with the facts, proceedings below, and specification of issues on appeal.

* The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

We review a district court's determinations on the scope of an arbitration clause de novo, *Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998), and findings of fact for clear error, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 948, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). We interpret arbitration agreements to reflect the reasonable expectations of the parties to the contract, *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 28 (2d Cir.1995).

The contract at issue here is best interpreted to require E & Y arbitration of pure accounting issues, and AAA arbitration of all other issues. Section 8(a) applies to "all questions, issues or disputes arising under this Agreement," while Section 8(b) applies to "all questions, issues or disputes arising under this Agreement with respect to the calculations of the ... Earned Payout Amount." [A 66] We have previously held that an arbitration clause covering "computation" of the amount of indemnification for the effects of changes in tax law covered tax issues and did not extend to allegations of bad faith. *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 827, 832—33 (2d Cir.1988). The clause here is arguably broader, in that it includes issues "with respect to" calculations, rather than just calculations, but the language still requires a close relationship of the disputed issue to the process of arriving at the final earnout amount.

This conclusion is bolstered, as it was in *McDonnell,* by the choice of a specialized arbitrator. In *McDonnell,* the court cited the fact that the chosen arbitrator was a tax lawyer as compelling evidence that the scope of the clause was limited to tax issues. *Id.* at 832. Here, the fact that the chosen arbitrator is an accounting firm verifies the import of the plain language: that the scope of the clause is limited to those issues closely related to accounting. The district court's conclusions as to the scope of the arbitration clause were therefore correct.

XL nonetheless urges that the fraud, negligent misrepresentation, and breach of contract claims here are simply accounting issues in disguise, relying on the non-binding authority of *Ivax Corp. v. B. Braun of America, Inc.,* 286 F.3d 1309 (11th Cir. 2002). Unlike *Ivax,* however, the claims here focus on the addition of the new line of business [SA 104—05], the misrepresentation that this new line would be excluded from the earnout calculation [SA 106—07], and the evasive failure to provide required Worksheets. [SA 107—10] In other words, the operative acts giving rise to the claimed cause of action are not the calculation errors themselves, as they were in *Ivax.* Similarly, the breach of contract and good faith claims are based on the failure to properly operate ECS and provide required Worksheets. [SA 118—21] Indeed, the gravamen of the claims before the AAA is that after the alleged fraud or breach, the Worksheets necessarily lead to a lower earnout payment. In that sense, the claims assume accurate *calculation* of the Worksheets in order to make out the causal nexus to the claimed damages.

We therefore hold that the statement of claim filed with the AAA is, as drafted, properly within Section 8(a) of the contract and is properly before the AAA. However, we caution that our conclusion is dependent on the specific situation described in this order, and is not a back door permitting accounting issues to be brought before the AAA. The decision below draws this line as well, noting that pure accounting issues may remain even after the AAA

resolves the issues before it.** [SPA 6] We further clarify that any portion of the dispute currently before the AAA which turns on an objection to the Worksheet rather than an objection to acts that have changed the facts on which the Worksheet is based, must also be referred to E&Y for resolution.

For the above reasons, we affirm the judgment of the district court.

---

** For example, the appellees conceded, both before the district court and at oral argument, that the use of the Borheeter–Ferguson calculation method rather than the Cape Cod method, and the use of a calendar year rather than a policy year, were pure accounting issues intended for E&Y arbitration.

