**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0051n.06**

**No. 13-5115**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| PUREWORKS, INC., | ) | **FILED** |
|  | ) | JAN 21, 2014 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| UNIQUE SOFTWARE SOLUTIONS, INC. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE MIDDLE |
| Defendant-Appellee. | ) | DISTRICT OF TENNESSEE |
|  | ) |  |
|  | ) |  |

BEFORE: ROGERS, STRANCH, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. This appeal concerns the arbitrability of earn-out covenants in an asset purchase agreement. Because the disputed issues arguably fall within the scope of the parties' arbitration agreement, the district court properly determined that the dispute was arbitrable. For similar reasons, the district court committed no error in confirming the arbitration award.

In 2008, Unique Software Solutions, Inc. sold its primary business to PureWorks, Inc. The consideration included an "earn-out," a form of payment the parties linked to revenues from the buyer's operation of the business. In connection with the earn-out, the parties negotiated operational covenants, including the requirement in § 1.3(c)(vii) of the purchase agreement that PureWorks "operate and fund the [b]usiness with a view towards maximizing revenues (consistent with [Unique Software's] past practices)."

No. 13-5115
*PureWorks, Inc. v. Unique Software Solutions, Inc.*

Interlocking sections of the agreement addressed earn-out disputes. First, § 1.3(c)(v) required PureWorks to prepare regular earn-out reports detailing the revenues of the transferred business:

> For each month during 2009 and 2010, the Buyer shall prepare and deliver to the Seller . . . reasonably detailed reports as to the monthly Revenue for the Business . . . In addition, no later than sixty (60) days following the end of the 2009 calendar year and the end of the 2010 calendar year, the Buyer shall deliver to the Seller a reasonably detailed report as to the Revenue of the Business for the applicable year.

Section 1.3(c)(v) also addressed disputes related to the earn-out report:

> With respect to the process for finalizing the Earn-out Report and resolving disputes regarding the Earn-out Report, the parties agree that each shall have the rights, and each shall follow the procedures, set forth in Section 1.5 (b), (c) and (d).

Section 1.5(b) provided that the earn-out report would become final unless Unique Software "deliver[ed] written notice to [PureWorks] of its disagreement as to any item included in the [earn-out report]." In the event the parties were unable to resolve a dispute, § 1.5(c) provided for arbitration by an accounting firm:

> The Accounting Firm shall be engaged jointly by the parties to decide the dispute with respect to the [Earn-Out Report] . . . The decision of the Accounting Firm shall be final and binding upon the parties, and, accordingly, a judgment by a court of competent jurisdiction may be entered in accordance therewith.

Following allegations that PureWorks had violated the earn-out covenants, the district court ordered arbitration. The court reasoned, first, that any doubts concerning the scope of the arbitration agreement should be resolved in favor of arbitration, *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983), and, second, that operational disagreements *affecting* the earn-out report—including allegations that PureWorks had failed to comply with the

earn-out covenants—fell within the scope of §§ 1.3(c)(v) and 1.5(c). Arbitration resulted in an award for Unique Software, which the district court confirmed. PureWorks appealed, arguing that the dispute resolution procedures in §§ 1.3(c)(v) and 1.5(c) reached only issues of accounting, not operational disagreements.

The district court properly assigned operational issues to arbitration, because performance of the earn-out covenants fell within the scope of the arbitration agreement. We review arbitrability de novo, evaluating the language of the contract and considering the law's strong presumption of arbitrability. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 502–04 (6th Cir. 2007). Sections 1.3(c)(v) and 1.5(c) of the purchase agreement provided broadly for arbitration of "disputes regarding the [e]arn-out [r]eport," and, considering the presumption of arbitrability, operational disagreements affecting the earn-out report—including disputes about performance of the earn-out covenants—qualified as disputes regarding the earn-out report. Therefore, the operational disputes raised by Unique Software fell within the arbitration provisions of §§ 1.3(c)(v) and 1.5(c). Moreover, nothing in the purchase agreement expressly foreclosed arbitration of operational disputes, and no text explicitly required the parties to arbitrate only disagreements related to accounting.

Although PureWorks offers a reasonable alternative construction of the contract, for the reasons that follow, its arguments do not preclude the interpretation of the arbitration clauses adopted by the district court. Accordingly, the district court properly concluded the dispute was arbitrable. *See Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004).

First, contrary to arguments by PureWorks, the general dispute resolution provisions within the agreement do not establish that the parties intended to litigate—and not to arbitrate—all disagreements related to the performance of the earn-out covenants. Instead, one could reasonably construe the sections to suggest that the parties contemplated the possibility of litigation related to issues outside the scope of the earn-out report. This interpretation is supported by the fact that the parties are bound by a number of obligations unrelated to the earn-out payment, e.g., non-competition agreements.

Second, the fact that the parties have selected an accountant as their arbitrator does not foreclose the arbitrability of operational disputes. In similar cases, we have recognized the arbitrability of operational disputes where the parties appointed accountant-arbitrators. *See JPD, Inc. v. Chonimed Holdings, Inc.*, 539 F.3d 388, 390–91 (6th Cir. 2008).

Third, the absence of extensive procedural guidance for the arbitrator does not establish that PureWorks and Unique Software intended to arbitrate only accounting disputes. The relevant provision of the purchase agreement, § 1.5(c), provides that the parties agree to "use their best efforts to cooperate with the Accounting Firm, including providing (or providing access to) any documents or personnel reasonably requested." Contrary to PureWorks' arguments, it cannot be the case that the absence of detailed procedures in § 1.5(c) definitively signals an intent to avoid arbitration. As PureWorks agrees, accounting disputes are arbitrable, and even accounting disputes might require the arbitrator's use of procedures not specifically listed in § 1.5(c). Moreover, no section of the purchase agreement limits the arbitrator's authority to determine a reasonable means

of resolving disputes between the parties. This absence of detailed contractual guidance is unsurprising: in general, once a disagreement is arbitrable, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (internal quotation marks omitted).

PureWorks' arguments concerning the time limitations on the dispute resolution process are equally unconvincing. The relevant timeline provision, § 1.5(c), provides that an accounting firm was to "be engaged jointly by the parties to decide . . . dispute[s] with respect to the [earn-out report] within thirty (30) days from its appointment." PureWorks interprets this language to mean the arbitrator had just thirty days following his appointment to resolve the dispute, and argues that the parties could not have intended the arbitrator to address operational disputes within that thirty-day period.

In addition to assuming that operational disputes cannot be resolved within thirty days—and that operational disputes are inherently more complex than disagreements about accounting—PureWorks' argument is also flawed because § 1.5(c) can be interpreted as providing the parties with thirty days to *engage* an arbitrator *after* the arbitrator's appointment. This interpretation is supported by the consideration that a thirty-day engagement timeline would present fewer logistical hurdles than the reading advanced by PureWorks, given the time needed to engage an arbitrator following the appointment process. Indeed, the parties in this case did not submit their

first correspondence with the arbitrator until just six days before the thirty-day window closed, and did not engage the arbitrator until just two days before the end of the thirty-day period.

PureWorks' assertions about the narrowness of the arbitration clauses do not change this analysis. PureWorks argues that one should narrowly construe arbitrability under §§ 1.3(c)(v) and 1.5(c) because—according to PureWorks—the clauses themselves are narrow, and courts in other circuits have applied more stringent tests of arbitrability to narrow (as opposed to broad) arbitration clauses. *See, e.g., Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). This argument is not persuasive for several reasons. First, to establish that §§ 1.3(c)(v) and 1.5(c) are narrow, PureWorks assumes part of the result it seeks: that the parties agreed to arbitrate only a limited range of issues related to certain financial statements, which PureWorks describes as "narrow." Second, to illustrate the manner in which the Sixth Circuit analyzes what PureWorks construes as "narrow" arbitration clauses, PureWorks relies upon distinguishable precedent. PureWorks asserts that §§ 1.3(c)(v) and 1.5(c) are akin to the arbitration clause at issue in *Bratt Enterprises, Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003).

There, however, the parties limited arbitrability to "disagree[ments] with any of the amounts included in the Closing Balance Sheet." *Id.* at 612. We held, however, that although underlying disputes concerning amounts in the balance sheet were arbitrable, a dispute regarding the validity of an independent provision putting a cap on the amount that could be recovered was not a disagreement about an amount included in the Closing Balance Sheet. *Id.* at 613. By contrast, the

issues in this case concern and affect the numbers that were included in the earn-out report, and thus are, or at least arguably are, "disputes regarding the earn-out report."

Finally, for reasons similar to the ones outlined above, the court properly affirmed the arbitration award. PureWorks argues that the arbitrator exceeded the powers allocated in the purchase agreement. However, the terms of the contract define the powers of the arbitrator. *See Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682-83 (2010). Courts play only a limited role in reviewing the decisions of arbitrators. *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000). So long as arbitrators arguably construe the contract and act within the scope of their authority, courts may not overturn their decisions, even if the courts are convinced the arbitrators have committed serious error. *Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 429 F.3d 640, 643 (6th Cir. 2005). When an agreement between the parties includes an agreement to enter a judgment in court upon the arbitration award, the court must grant the order unless the award is vacated, modified, or corrected pursuant to the law. 9 U.S.C. §9.

The judgment of the district court is AFFIRMED.

No. 13-5115
*PureWorks, Inc. v. Unique Software Solutions, Inc.*

STRANCH, Circuit Judge, concurring.

I join the majority opinion but write separately to address my concerns regarding the need for clear language in agreements governing the arbitration of business disputes. Context is important here. I address only arbitration clauses negotiated and crafted by business entities of relatively equal bargaining power and legal representation for the purpose of settling their disputes.

No practitioner can foresee all the potential disputes that may arise as a business deal is undertaken. But the courts must address agreements after disputes arise and can occasionally identify trends in the language of agreements that may prove to be problematic. It seems to me that the language related to accounting arbitrations is one such area. Take for example the dispute here—whether an earn-out arbitration clause is limited to accounting and calculation disputes or also governs operational disputes. That issue has been litigated numerous times over the past few years. *See, e.g., JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388 (6th Cir. 2008); *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1 (1st Cir. 2004); *Orrico v. Alliant Foodservice, Inc.*, 119 F. App'x 899 (9th Cir. 2004); *XL Capital, Ltd. v. Kronenberg*, 145 F. App'x 384 (2d Cir. 2005).

The problems growing from the language of accounting arbitration agreements are exemplified in the two intertwined issues presented in this case: whether the district court properly compelled arbitration and whether the arbitrator's decision was arguably within the scope of the authority assigned to him. The first we review de novo and hinges on what the

parties intended regarding arbitration because—even given the law's strong presumption of arbitrability—"we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) (internal quotation marks omitted). However, "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (internal citations omitted). The second issue we review under "one of the narrowest standards of judicial review in all of American jurisprudence. [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," we affirm an arbitration award. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (internal quotation marks and citations omitted). Both of these inquiries rely on the language of the contract, which demonstrates the importance of precise language.

The lack of clarity in the language of the Purchase Agreement here spawned the primary disagreement—whether the parties intended to include operational disputes in the arbitration grant. I find this to be a close question, for both practical and textual reasons. There is support for PureWorks's argument that the parties intended the scope of arbitration to be limited to accounting as opposed to operational disputes because, among other reasons, the Purchase Agreement designates an accounting firm as the arbitrator. "[I]t makes no sense to assume that accountants would be entrusted with evaluating disputes about the operation of the business in question," thus the assignment of an accounting firm as arbitrator is evidence that the arbitration

is limited to accounting issues. *Fit Tech,* 374 F.3d at 8–9 (citing four other cases that also found

the assignment of an accountant as arbitrator to be a limiting factor); *see also XL Capital*, 145 F.

App'x at 385; *E.S. Originals Inc. v. Totes Isotoner Corp.*, 734 F. Supp. 2d 523, 532 (S.D.N.Y.

2010).

Despite some support for a limited scope of arbitration, Unique Software offered—and

the district court compelled arbitration based on—an interpretation of the Agreement that gives

the accountant-arbitrator authority to review operational decisions and make legal findings.

Three separate phrases in the Agreement reference the subject matter of arbitration. One broadly

assigns all "disputes regarding the earn-out report" to arbitration, a phrase that supports an

intention to include in the arbitration grant disputes over operational covenants underlying the

earn-out report. Thus, while law and practical support can be found for the position of Pure

Works, the language of the Purchase Agreement did not clearly reflect that intent so the

presumption of arbitrability prevails. Likewise, this interpretation of the language of the

Agreement demonstrates that the arbitrator's award was arguably within the grant of his

authority.

There has been a decided move to mandate the use of arbitration for resolution of

business against business disputes. Statutes and now caselaw frequently enforce that intention.

But in this rush to flee the courthouse, it appears that the parties have not always thought through

or written their agreements with the clarity necessary to delineate what disputes will be entrusted

to what type of arbitrator. Nor, it seems, have the parties always understood the limitations their

contractual promises place on the availability of judicial rights and remedies. These costs and

benefits should be counted and clear language drafted to reflect the specific intentions of the

parties. That clarity would benefit both the parties and the courts.