STRANCH, Circuit Judge,
concurring.
I join the majority opinion but write separately to address my concerns regarding the need for clear language in agreements governing the arbitration of business disputes. Context is important here. I address only arbitration clauses negotiated and crafted by business entities of relatively equal bargaining power and legal representation for the purpose of settling their disputes.
No practitioner can foresee all the potential disputes that may arise as a business deal is undertaken. But the courts must address agreements after disputes arise and can occasionally identify trends in the language of agreements that may prove to be problematic. It seems to me that the language related to accounting arbitrations is one such area. Take for example the dispute here — whether an earn-out arbitration clause is limited to *381 accounting and calculation disputes or also governs operational disputes. That issue has been litigated numerous times over the past few years. See, e.g., JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388 (6th Cir.2008); Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1 (1st Cir.2004); Orrico v. Alliant Foodservice, Inc., 119 Fed.Appx. 899 (9th Cir.2004); XL Capital, Ltd. v. Kronenberg, 145 Fed.Appx. 384 (2d Cir.2005).
The problems growing from the language of accounting arbitration agreements are exemplified in the two intertwined issues presented in this case: whether the district court properly compelled arbitration and whether the arbitrator’s decision was arguably within the scope of the authority assigned to him. The first we review de novo and hinges on what the parties intended regarding arbitration because — even given the law’s strong presumption of arbitrability — “we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract.” Nestle Waters N. Am., Inc. v. Bollman, 505 F.3d 498, 503 (6th Cir.2007) (internal quotation marks omitted). However, “any ambiguities in the contract or doubts as to the parties’ intentions should be resolved in favor of arbitration.” Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir.2000) (internal citations omitted). The second issue we review under “one of the narrowest standards of judicial review in all of American jurisprudence. [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,” we affirm an arbitration award. Nationwide Mut. Ins. Co. v. Home Ins. Co., 429 F.3d 640, 643 (6th Cir.2005) (internal quotation marks and citations omitted). Both of these inquiries rely on the language of the contract, which demonstrates the importance of precise language.
The lack of clarity in the language of the Purchase Agreement here spawned the primary disagreement — whether the parties intended to include operational disputes in the arbitration grant. I find this to be a close question, for both practical and textual reasons. There is support for PureWorks’s argument that the parties intended the scope of arbitration to be limited to accounting as opposed to operational disputes because, among other reasons, the Purchase Agreement designates an accounting firm as the arbitrator. “[I]t makes no sense to assume that accountants would be entrusted with evaluating disputes about the operation of the business in question,” thus the assignment of an accounting firm as arbitrator is evidence that the arbitration is limited to accounting issues. Fit Tech, 374 F.3d at 8-9 (citing four other cases that also found the assignment of an accountant as arbitrator to be a limiting factor); see also XL Capital, 145 Fed.Appx. at 385; E.S. Originals Inc. v. Totes Isotoner Corp., 734 F.Supp.2d 523, 532 (S.D.N.Y.2010).
Despite some support for a limited scope of arbitration, Unique Software offered— and the district court compelled arbitration based on — an interpretation of the Agreement that gives the accountant-arbitrator authority to review operational decisions and make legal findings. Three separate phrases in the Agreement reference the subject matter of arbitration. One broadly assigns all “disputes regarding the earn-out report” to arbitration, a phrase that supports an intention to include in the arbitration grant disputes over operational covenants underlying the earn-out report. Thus, while law and practical support can be found for the position of Pure Works, the language of the Purchase Agreement did not clearly reflect that intent so the presumption of arbitrability prevails. Likewise, this interpretation of the lan *382 guage of the Agreement demonstrates that the arbitrator’s award was arguably within the grant of his authority.
There has been a decided move to mandate the use of arbitration for resolution of business against business disputes. Statutes and now caselaw frequently enforce that intention. But in this rush to flee the courthouse, it appears that the parties have not always thought through or written their agreements with the clarity necessary to delineate what disputes will be entrusted to what type of arbitrator. Nor, it seems, have the parties always understood the limitations their contractual promises place on the availability of judicial rights and remedies. These costs and benefits should be counted and clear language drafted to reflect the specific intentions of the parties. That clarity would benefit both the parties and the courts.