ROGERS, J., delivered the opinion of the court in which SUHRHEINRICH, J., joined. CLAY, J. (pp. 831-37), delivered a separate dissenting opinion.
OPINION
ROGERS, Circuit Judge.
This appeal concerns whether a particular contract-interpretation dispute involving corporate structure is subject to the provision in the contract for arbitration by an accounting firm, and also whether the party seeking arbitration waived its right to arbitrate through its conduct before and during litigation. Under a consent decree in a lawsuit relating to employee retirement benefits, Navistar makes annual contributions to a Supplemental Benefit Trust managed by a Supplemental Benefit Committee (SBC). The size of Navistar’s contributions is determined by a formula provided in the agreement that takes as inputs data on Navis-tar’s economic performance, and Navistar must under the agreement regularly provide data to the SBC to permit it to evaluate whether Navistar is applying the formula correctly. The agreement provides for arbitration before an accounting firm in the event that the SBC disputes the “information or calculations” Navistar provides to it. The SBC intervened in the original lawsuit, ultimately claiming that Navistar was improperly classifying various aspects of its business activities and structuring its business so as to evade its profit-sharing obligations under the agreement. Navistar claimed that under the accountant arbitration mechanism provided for in the agreement, which applies to disputes over the “information or calculations” provided by Navistar, the SBC’s claims were subject to arbitration. The district court correctly agreed with Navis-tar that the claims were subject to arbitration. However, contrary to the district court’s ruling, Navistar’s conduct before and during litigation did not amount to a waiver of its right to arbitrate the claims. Arbitration is therefore required.
The arbitration clause at issue is contained in a settlement agreement and consent decree in a class action lawsuit (Shy et al. v. Navistar International Corporation) relating to Navistar’s obligations to its retired employees. As part of the agreement and consent decree, Navistar had an obligation to make yearly profit-sharing payments to a Supplemental Benefit Trust. The agreement created the SBC as the fiduciary and administrator of the Supplemental Benefit Trust. The methods for calculating and enforcing Nav-istar’s obligation were outlined in a Profit Sharing Plan (Plan) attached as an appendix to the agreement and decree. Section 8 of the Plan required a regular report by Navistar to the SBC of financial informa *823 tion necessary to confirm that Navistar was making contributions in the amounts required by the plan. Section 8 also contains a dispute resolution clause that requires disputes over the “information or calculation^]” provided by Navistar to be referred for binding determination to an accountant (or other neutral decisionmaker) chosen by the parties. In full, the clause provides:
8.4. If, following a review of the information and calculations provided pursuant to Sections 8.1, 8.2, and 8.3 the [SBC] disputes such information or calculation^], it shall inform the Company of such dispute within 30 calendar days of the receipt by the UAW and the [SBC] of such information. The Company and the [SBC] shall thereafter attempt, for a period not to exceed 30 calendar days, to resolve such dispute.
8.4.1. If such dispute cannot be resolved during that period, the parties to that dispute will attempt to identify a mutually acceptable third party (such as an accounting firm) to resolve such disputes.
8.4.2. If the parties to such dispute cannot identify a mutually acceptable third party to resolve such dispute, the parties to such dispute shall obtain a list of the seven largest accounting firms, measured by the number of certified public accountants practicing in the United States. The Company and the [SBC] shall then alternately, beginning with the Company, strike one name off such list until only one name remains. The remaining firm shall be empowered to resolve the dispute.
8.4.3. Following selection of the party to resolve the dispute as provided in Section 8.4.1 or 8.4.2, the parties to the dispute shall present evidence and argument in support of their position and the individual or firm shall render a decision which shall be final and binding on all parties to the dispute.
On July 2, 2009, the SBC sent Navis-tar a letter requesting additional financial information and disputing Navistar’s classification of Medicare Part D subsidies in its calculations of its profit sharing obligations. On August 3, 2009, Nav-istar replied, providing at least some of the requested information and declining to pursue dispute resolution over the Medicare subsidy classification issue on the grounds that reclassifying the subsidies would not affect Navistar’s overall obligations. On May 4, 2010, the SBC formally requested that Navistar arbitrate the Medicare subsidy issue and additionally requested other financial information. It appears that Navistar did not respond directly, but instead provided updated financial information (without directly addressing the SBC’s requests for arbitration and information) on April 6, 2011. On November 14, 2011, the SBC again requested more detailed financial information and threatened to go to court if Navistar failed to provide it. On February 15, 2012, Navistar replied to the SBC, listing general and itemized objections to the SBC’s information requests. Navistar also noted that it had not specifically responded to the SBC’s May 4 request because its response depended on ongoing litigation with the original parties to the Shy agreement.
On March 23, 2012, the SBC filed a motion to intervene in the Shy litigation, followed shortly by a motion to enforce the settlement agreement, seeking an order requiring Navistar to provide the information the SBC had requested. On April 13, 2012, Navistar filed a motion for extension of time seeking the court’s permission to delay Navistar’s response to the SBC’s motion to enforce until after the court ruled on the SBC’s motion to intervene. *824 On April 25, 2012, Navistar filed a response to the SBC’s motion to intervene, arguing that the SBC’s intervention was not proper. On February 6, 2013, the district court granted the SBC’s motion to intervene with instructions for the SBC to file a complaint, which it did on February 15, 2013. On March 11, 2013, Navistar filed a response to the SBC’s motion to enforce, as well as a motion to dismiss the SBC’s subsequent complaint, arguing for the first time, among other things, that the SBC’s requests for information were subject to the alternative dispute resolution procedures outlined in the Plan. On March 29, 2013, the district court sustained the SBC’s motion to enforce, finding that its dispute over what information Navistar had to provide under the Plan was not subject to the alternative dispute resolution procedures, and ordering Navistar to provide the information requested by the SBC. After Navistar provided this information, the SBC on August 21, 2013 filed a motion to amend its complaint, charging that Navistar had manipulated its corporate structure and accounting analysis to eliminate its profit-sharing obligations, in violation of the terms of the Plan. In particular, the SBC alleged the following four violations:
(1) forming entities which [Navistar] then treats as acquired businesses [treated more favorably from Navistar’s point of view under the Plan] and then reallocating their revenues or not properly or completely allocating costs and expenses among the Covered Operations;' (2) excluding dividends and similar payments from the calculation of Qualifying Profits; (3) excluding ... Medicare Part D subsidy payments from the calculation of Qualifying Profits; and (4) failing to exclude Bonus Eligible employees from the calculation of Qualifying Hours.
After the district court granted leave to amend, Navistar moved to dismiss the SBC’s amended complaint on the ground that the questions it raised were subject to arbitration under the Plan.
On March 6, 2014, the district court denied Navistar’s motion to dismiss the SBC’s amended complaint. The district court found that in all of the allegations in the amended complaint, the SBC was disputing the “information or calculations” provided by Navistar, and that therefore these claims fell under the scope of the arbitration clause. However, the court also held (although the SBC had not argued) that Navistar had waived its right to arbitrate those questions through its behavior before and during litigation. In particular, the court noted Navistar’s reluctance to enter into arbitration over the Medicare subsidy payments prior to litigation, and the fact that Navistar did not seek to arbitrate the SBC’s first claim requesting information until after the court granted the SBC’s motion to intervene. The court found that these decisions were “completely inconsistent with any reliance on the Plan’s dispute resolution procedures,” and also caused a delay that prejudiced the SBC by delaying the resolution of the dispute and any payments that the SBC might be entitled to. The district court denied Navistar’s motion to dismiss, and Navistar appeals. See 9 U.S.C. § 16(a)(1)(B).
The SBC’s claims against Navistar are all subject to arbitration, as the district court ruled, notwithstanding the SBC’s argument for affirmance on the alternative ground that the claims are not subject to arbitration under the arbitration clause. In each claim the SBC is “disputing] ... information or calculation^]” regarding Navistar’s obligations to the Supplemental Benefit Trust that Navistar provided under its reporting obligations under the set *825 tlement agreement. This places each claim within the scope of the arbitration clause.
The parties do not dispute for purposes of this appeal that § 8.4 is an arbitration agreement — albeit one with a narrow scope — to which the Federal Arbitration Act (FAA) applies. The First Circuit has persuasively held that the following elements, all present in this case as well, amounted to “arbitration in everything but name”: finality, “an independent adjudicator, substantive standards (the contractual terms ...), and an opportunity for each side to present its case.” See Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 7 (1st Cir.2004). The FAA applies even when the agreement is limited to only a particular class of disputes. Id.
Because the SBC’s claim, at its core, is that Navistar misclassified various aspects of its business, resulting in incorrect information being provided to the SBC, the SBC’s claims are within the scope of the arbitration agreement. Disputes over how earnings, hours worked, and similar aspects of a business should be categorized for the purposes of an accounting analysis are disputes over “information.” To the extent that the SBC’s claims extend beyond categorization to the operational practices of Navistar, the claims are so closely tied to the information provided to the SBC that the arbitration agreement still applies.
The SBC, in its underlying claims, disputes the categorization of various aspects of Navistar’s business in the reports Nav-istar provides, and so the SBC is disputing the “information” provided by Navistar. The SBC’s claims — about whether subsidiaries are “businesses acquired,” about the inclusion of various revenue sources and • Medicare Part D subsidies in “Qualifying Profits,” and about the inclusion of the hours of certain workers in “Qualifying Hours” — all directly concern the “information” provided by Navistar pursuant to its obligations under Section 8. In the agreement, “information” refers to the contents of “a worksheet detailing the calculation' of the Contribution obligation, the Qualifying Hours, and the Qualifying Profits, [including] a listing by category of the employees included and excluded in the calculation of Qualifying Hours and all information reasonably necessary to review the calculation of Qualifying Profits.” If — taking one of the SBC’s claims as an example — some employees were wrongly included in the calculation of Qualifying Hours when, under the terms of the contract, they should have been excluded, then the information in the worksheet is incorrect. The arbitration agreement applies when the SBC “disputes information or calculation^]” provided by Navistar, and is not limited by its terms to disputes over the calculations involved. If the SBC disputes Navistar’s classification of employees, it is plainly disputing the information Navistar has provided in its worksheet and its dispute is subject to arbitration. Thus the SBC’s classification disputes are subject to arbitration.
It is true that classification disputes, unlike calculation disputes, potentially involve questions of contract interpretation as well as accounting, but this does not fall outside the plain text of the arbitration agreement, for two reasons. First, the accountant-based nature of the dispute resolution procedure at most creates some ambiguity as to whether the scope of disputes over “information or calculation^]” was intended to be restricted to disputes in which no legal analysis whatsoever might be necessary. However, the otherwise unqualified language of the agreement trumps any assumption that the parties would not have committed le *826 gal disputes to an accountant’s resolution. The ambiguity — if there is any — must be “resolved in favor of arbitration” even when an arbitration clause is limited in scope. Bratt Enters. v. Noble Int’l Ltd., 338 F.3d 609, 613 (6th Cir.2003) (quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).
Second, the contract disputes involved in the SBC’s classification-based arguments are relatively simple and closely related to accounting; it is reasonable to suppose that the parties to the agreement intended such disputes to be arbitrated. To support its claim that Navistar misclassified newly formed subsidiaries as “businesses acquired,” the SBC points in its complaint to the agreement’s invocation of “generally accepted accounting principles.” The SBC’s second and third claimed contract violations relate to particular components of the Qualifying Profits calculation — income and dividends from acquired foreign entities and Medicare Part D subsidies. At first blush, the contract interpretation issues here appear to depend on questions of accounting — whether foreign entities were controlled by Navistar and whether the subsidies constituted “income.” Also, the SBC’s fourth claimed violation concerns whether employees were properly classified as “Bonus Eligible” for the calculation of “Qualifying Hours.” This appears to depend on how employees were compensated, which again is likely to be an area that accountants are familiar with. When accountants analyze businesses’ balance sheets, they necessarily categorize various aspects of the businesses’ performance in order to find the inputs to calculations. Thus it appears that an accountant arbitrator could resolve the SBC’s claims effectively, at least to the extent that they concern classifications in what is essentially an accounting analysis. In Fit Tech, while declining to order accountant arbitration for allegations of “business misconduct unrelated to accounting conventions,” the First Circuit nonetheless ordered accountant arbitration for “accounting issues.” 374 F.3d at 8.
While two of the SBC’s claimed violations — Navistar’s creation of and reallocation of profits to subsidiaries, and its exclusion of dividends earned from subsidiaries — are phrased in part as though they were operational violations involving business misconduct, they are still subject to arbitration. To the extent that they are operational issues rather than classification issues, they are still so closely connected to the information Nav-istar provides to the SBC that they count as disputes over that information. The SBC claims that Navistar created a number of domestic and foreign subsidiaries that it classified as “acquired businesses,” a classification that reduced the obligation to the Supplemental Benefits Trust created by the subsidiaries’ profit. Further, Navistar structured these subsidiaries in a way that minimized its obligations, for example, by having a foreign subsidiary not subject to the settlement agreement “nominally purchase” other subsidiaries. At bottom, these are classification disputes rather than operational disputes. The SBC alleges that the economic substance of Navistar’s business is not reflected in the structure of its subsidiaries, but it does not allege, for instance, that Navistar substantively hurt the performance of any aspects of its business in order to reduce its obligations. In contrast, in Fit Tech, the plaintiffs alleged — in a portion of their claim the First Circuit held was not subject to arbitration — that the defendants actively directed customers away from fitness centers whose profits determined the defendants’ obligations to the plain *827 tiffs. Id. at 4. At its core, then, the SBC’s claim appears to be that Navis-tar’s use of subsidiaries does not alter the economic reality of its business and should not alter the accounting analysis of its profit sharing obligations. Since the operational decisions the SBC complains of affected only the information provided to the SBC and not the substance of Navistar’s business, these are still disputes about information.
We have twice required accountant arbitration for operational disputes directly affecting information relevant to accounting. JPD Inc. v. Chronimed Holdings, Inc., 539 F.3d 388, 391 (6th Cir.2008); Pure-Works, Inc. v. Unique Software Solutions, Inc., 554 Fed.Appx. 376, 378 (6th Cir.2014). In JPD, the arbitration clause required arbitration for disputes over an earnings calculation, and also “all issues having a bearing on such dispute.” 539 F.3d at 391. We held that this language applied to allegations that the defendant had engaged in business practices that had hurt the business whose earnings were at issue, in violation of “contractual commitments to maximize earnings.” Id. The language in the arbitration agreement in this case is slightly narrower: arbitration is required only when the SBC “disputes [the] information or caleulation[s]” provided by Navistar, and not when it merely has a dispute bearing on the information. But the operational dispute in JPD was less closely connected to accounting calculations than in Navistar’s case, as the defendant’s alleged misconduct in JPD affected the performance of the business (hurting the business of entities whose earnings were subject to profit sharing) as well as the information provided. In short, operational disputes may be committed to accountant arbitration, if the language of the arbitration clause, as in JPD, can fairly be read to cover such disputes.
The accountant arbitration clause in PureWorks applied to “disagreements] as to any item included in the [earnout report],” language that is much closer to this arbitration agreement. 554 Fed.Appx. at 378 (second alteration in the original). In an unpublished opinion, we required arbitration of “operational disagreements affecting the earn-out report — including disputes about performance of the earn-out covenants.” Id. Such disputes “concern and affect the numbers that were included in the earn-out report,” and therefore were at least arguably included in the arbitration clause. Id. at 380. This analysis applies equally to the operational disputes here. The SBC challenges Navistar’s corporate structure not fundamentally because it wishes to restructure the company but because it wishes to change the way business information was reported by Nav-istar; the SBC cares about operations only insofar as they affect the accounting. It is plausible to interpret “dispute the information [provided by Navistar]” as including a claim that the information ought to change because the corporate structure the information reflects violates the settlement agreement. Therefore, the federal policy in favor of arbitration requires arbitration. As we held in Nestle Waters North America, Inc. v. Bollman, the strong federal policy in favor of arbitration resolves any doubts as to the parties’ intentions in favor of arbitration. 505 F.3d 498, 503 (6th Cir.2007).
In addition, Navistar did not waive arbitration. Navistar’s pre-litigation conduct and failure to raise arbitration in its response to the SBC’s motion to intervene at the start of litigation did not constitute a waiver of its right to arbitrate the claims- raised by the SBC. A party waives arbitration if it acts in a manner “completely inconsistent with any reliance on an arbitration agreement” or delays asserting *828 arbitration “to such an extent that the opposing party incur[red] actual prejudice.” Hurley v. Deutsche Bank Trust Co. Americas, 610 F.3d 334, 338 (6th Cir.2010). Both inconsistency and actual prejudice are required, and neither is present here. In contrast, in Johnson Associates. Corp. v. HL Operating Corp., 680 F.3d 713, 720 (6th Cir.2012), we held there was waiver after holding- that both factors were present. Moreover, much of Navistar’s conduct at issue here concerned a question that the district court has already decided: whether Navistar must comply with the SBC’s request for information. Even if Navistar’s conduct waived Navistar’s right to arbitrate that question, the conduct was consistent with reliance on the arbitration agreement for resolution of disputes arising after Navistar supplied the information.
The district court’s ruling on waiver relies on the following actions by Navistar, which are a subset of the total interactions between Navistar and the SBC that led to the present dispute:
1. On August 3, 2009, Navistar declined the SBC’s request to arbitrate the classification of Medicare Part D subsidies, claiming that even if the SBC prevailed this would not affect Navistar’s obligations under the plan.
2. Navistar did not respond to a further notice of dispute sent on May 4, 2010 by the SBC relating to Navis-tar’s treatment of Medicare Part D subsidies and requesting further information about the company’s finances; in its next letter on April 6, 2011,. Navistar simply provided an update as to its calculation of qualifying profits and did not mention the dispute.
3. On April 25, 2012, Navistar opposed the SBC’s motion to intervene (in which the SBC sought an order compelling Navistar to provide the information required by the Plan) without raising arbitration as a defense. Navistar first argued that arbitration was required on March 11, 2013 in its answer to the SBC’s complaint and its simultaneously filed reply to the SBC’s motion to enforce the set-' tlement agreement.
None of these three actions, individually or as a whole, amounts to a waiver of arbitration. Navistar’s letter to the SBC regarding Medicare Part D subsidies on August 3, 2009 — -item 1 in the list above— explicitly acknowledges that, in the abstract, a dispute over the classification of the subsidies is arbitrable. In declining to arbitrate the dispute on the grounds that in no event would Navistar owe payments to the Supplemental Benefit Trust, Navis-tar noted: “[W]e must at this time respectfully decline your request that the parties initiate the dispute resolution procedures in the Plan, as the dispute you identify has no impact whatsoever on the profit sharing payments due.... Navistar will agree, however, that this issue has been timely raised by the [SBC] in the event the dispute becomes material in any future year.” This appears to be a reference to the requirement in § 8.4 of the Plan — the arbitration clause of the agreement — that the SBC notify Navistar of any dispute within 30 days of the receipt of the information that the dispute is about. Such a statement is completely consistent with a willingness to arbitrate.
Navistar’s failure to respond to the SBC’s May 4, 2010 notice of dispute as to the Medicare Part D subsidies — item 2 in the list above — is more concerning, but it still does not come close to waiver. Ignoring a formal invocation of arbitration procedures (if that is in fact what Navistar did, and the record does not provide evi *829 dence otherwise) is consistent with reliance on arbitration, at least in these circumstances. There is no .evidence in the record that the SBC explained, either in its May 4 notice or at any other time, why it believed that the dispute over the subsidies was not moot, as previously suggested by Navistar. Navistar may have ignored the notice, therefore, not because it disclaimed reliance on arbitration but simply because it still considered the dispute moot and doubted that it was worth the SBC’s time to pursue that matter. We have repeatedly determined that there was no waiver when a party refused to arbitrate, prior to the commencement of litigation, on the grounds that its opponent’s claims were substantively weak. JPD Inc., 539 F.3d at 394; Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 574 (6th Cir.2003). A reply explaining why Navistar was unwilling to arbitrate would have been helpful, but in the context of its previously stated reason for not arbitrating, Navistar’s silence can easily be seen, in the words of the Highlands decision, as “the typical posturing that may occur where one party is attempting to ‘stare down’ the other party in the hope that the other party will simply give up.” 350 F.3d at 574. This silence is therefore consistent with reliance on arbitration and not sufficient for waiver.
Moreover, Navistar’s pre-litigation behavior did not delay proceedings in a way that actually prejudiced the SBC. While the dispute over the subsidies is still unresolved several years after Navistar’s indifference to the SBC’s request for arbitration, this delay cannot be solely attributed to Navistar. The SBC could have sought a court order compelling arbitration at any time after Navistar refused to arbitrate the issue, but it never did so and now argues that the question is not subject to arbitration. Navistar’s conduct is thus not the sole cause of any prejudice the SBC may have suffered.
Waiver can also not be inferred from Navistar’s delay, once litigation commenced, in seeking arbitration of what information it had to provide'to the SBC. Navistar raised arbitration as a defense in its second substantive submission in the litigation.[1] In its first, its opposition to the SBC’s motion to intervene, Navistar argued only that the SBC’s intervention was improper. It sought to delay any response to the SBC’s claims — including defenses that might force dismissal — until the district court determined that the intervention was proper to begin with. This approach is reasonable. In this context, Navistar’s suggestion that the SBC could have filed a complaint in new litigation does not amount to acknowledging that litigation was the appropriate dispute resolution method. Instead, the court overseeing the new litigation, and not the Shy litigation court, would have resolved Navistar’s objections to the SBC’s suit for information, including the applicability of arbitration. This procedural posture distinguishes this case from Johnson Associates, in which we held there was a waiver of arbitration when the defendant failed to raise arbitration as a defense in its answer to the plaintiffs complaint. 680 F.3d at *830 718. Navistar’s response to the SBC’s motion to intervene properly did not raise arbitration as a defense because the motion addressed only the SBC’s right to intervene and not the validity of the SBC’s claims. In this context, arguing that the SBC ought to bring a fresh lawsuit instead of intervening does not waive arbitration because it does not imply a willingness to litigate the substantive dispute, only a desire to raise all defenses, including arbitration, in the context of fresh litigation.
A further distinction with Johnson Associates lends additional support for this point. In that case, the defendant engaged in litigation, including discovery, after not raising arbitration in its answer and before invoking it. Id. at 720. That is not the case here. Between its response to the SBC’s motion to intervene and the court’s decision to allow the intervention, Navistar did not actively pursue litigation in any way. Its only substantial filing on the record was a response to the SBC’s motion to amend its motion to enforce the settlement agreement, in which it simply reiterated its position that it would respond to the motion to enforce after the district court ruled on the motion to intervene. Thus Navistar’s conduct did not suggest that it intended to litigate rather than arbitrate its dispute with the SBC.
Navistar’s not engaging in litigation while the SBC’s motion to enforce was pending also means that it did not prejudice the SBC by failing to raise arbitration earlier. In the context of a motion to amend a complaint, “[djelay alone, ... without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial.” Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir.1986) (quoting Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir.1980)). Adopting this rule in the waiver context, we held that the defendant in Johnson Associates caused prejudice by delaying its invocation of arbitration because the plaintiffs had expended expense and effort in discovery that would not be helpful in arbitration. 680 F.3d at 720. That is not the case here, because the litigation did not advance at all while the SBC’s motion to intervene was pending, so the SBC wasted relatively few resources on unnecessary litigation.
Finally, the SBC was not prejudiced because of Navistar’s allegedly untimely request for arbitration of a dispute that was not subject to arbitration in the first place. All of the claims in the SBC’s amended complaint except for the dispute as to the classification of Medicare Part D subsidies arose after the actions by Navistar that allegedly constitute waiver. The district court allowed the SBC’s motion to intervene and ordered Navistar to provide the information that the SBC requested, in the process ruling that the dispute over whether Navistar was obligated to provide the requested information was not subject to arbitration.[2] The SBC subsequently amended its complaint to include further specific claims as to the information and calculations provided by Navistar, and it is the arbitrability of those claims that is now at issue. Thus even if Navistar’s conduct waived the right to arbitrate the extent of its reporting obligations to the SBC, it *831 does not make sense to apply that waiver to disputes that arose after it (finally) fulfilled those obligations. Had Navistar not attempted to arbitrate the extent of its reporting obligations at all and left the arbitration defense out of its answer to the SBC’s first complaint, the course of litigation would have been unaffected. It would then be unreasonable to maintain that Navistar’s failure to seek arbitration of an issue that the district court found was not covered by the arbitration clause waived Navistar’s right to seek arbitration of other disputes. Even if Navistar’s eventual attempt to arbitrate the preliminary question of how much information it had to provide to the SBC proved that its prior conduct was a bad faith attempt to delay the resolution of the dispute, the SBC was not harmed by Navistar’s behavior. This is because the question Navistar tardily sought to arbitrate could not be arbitrated in the first place; seeking to arbitrate earlier would not in itself have advanced proceedings. While Navistar may bear some responsibility for the long duration of its dispute with the SBC, its behavior with regard to arbitration does not satisfy the particular elements of waiver.
For the foregoing reasons, the district court’s decision is VACATED and REMANDED with instructions to order arbitration of the claims in the SBC’s Second Amended Complaint.

. Navistar's motion to dismiss the SBC’s first complaint and response to the SBC’s motion to enforce did not use the word ''arbitration,” but both argued that the SBC’s claims were subject to the dispute resolution procedure identified in the Plan and were therefore not properly before the district court. The district court correctly held — and the SBC does not dispute — that these arguments in effect invoked arbitration. In these filings, Navistar affirmatively displayed its desire to submit the SBC’s claims to the alternative dispute resolution procedure and its belief that the Plan required Navistar and the SBC to do so. This is sufficient to invoke arbitration.

. The SBC's motion to enforce put Navistar on notice that the SBC suspected that Navis-tar was "intentionally manipulating the placement of revenues and costs in its various business units” to reduce its profit-sharing obligations, but the motion did not seek relief for harm arising from such manipulation and did not explicitly state that the SBC intended to litigate rather than arbitrate any claims arising from such manipulation. Instead, the motion only explicitly requested that the district court order Navistar to provide the information required by the Settlement Agreement.