NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0703n.06

Case No. 17-1217

**FILED**
Dec 27, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

AQUALUCID CONSULTANTS, INC. and )
DAVID MORRISON, SR., )
                        )
    Plaintiffs-Appellants, )     ON APPEAL FROM THE UNITED
                        )     STATES DISTRICT COURT FOR
v. )     THE WESTERN DISTRICT OF
                        )     MICHIGAN
ZETA CORPORATION and CAROLYN )
BARTOE PITTS, individually, and as wife as )
the personal representative of the Estate of )
Michael Pitts, jointly and severally, )
                       
    Defendants-Appellees.

BEFORE: DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiffs-Appellants filed a complaint in 2014, alleging numerous claims against Defendants-Appellees arising from a joint venture to secure a research study with the United States Army Corps of Engineers to develop non-chemical water treatments. After various delays in the litigation, the district court granted judgment on the pleadings in favor of Defendants and dismissed Plaintiffs' claims, concluding that a binding arbitration agreement governed the entire action. On appeal, Plaintiffs challenge the posture of the motion, the enforceability of the arbitration agreement, and the scope of the agreement. Primarily, Plaintiffs contend that Defendants waived their rights under the arbitration

agreement by taking actions that were inconsistent with a reliance on arbitration. For the following reasons, we **AFFIRM**.

I.

Plaintiff David Morrison, Sr. and Plaintiff Aqualucid Consultants, Inc. ("Aqualucid") engaged with Defendant Zeta Corporation ("Zeta") and Defendant Michael Pitts,[1] on a project to secure a study with the Construction Engineering Research Laboratory ("CERL"), a department of the United States Corps of Engineers, to show the effectiveness of non-chemical water treatments using Zeta's proprietary equipment and technology. The proposal, developed from Morrison's marketing strategy, involved creating a Demonstration/Validation ("DEM/VAL") of Zeta's technology for CERL. Morrison approached Zeta with the marketing strategy, and in May 2006, Aqualucid was formed as a joint venture to combine the use of the marketing strategy and Zeta's equipment. Both Morrison and Pitts served as shareholders of Aqualucid.

Participation in the study involved three separate contractual agreements: (1) a Professional Services Agreement ("PSA") between Aqualucid and Zeta, dated December 2006; (2) a Sales Representative Agreement ("SRA"), making Aqualucid an authorized sales representative of Zeta, dated July 2006; and (3) a cooperative research and development agreement ("CRADA") between Zeta, Aqualucid, and the United States government, signed by all parties between February and March 2007. Most significant to this appeal is the PSA, which formalized the relationship between Aqualucid and Zeta, outlining the work to be performed and the compensation schedule for the two parties to cooperate in developing the CRADA. The PSA also contained an arbitration clause binding "[a]ny claim, dispute or other matter in question arising out of or related to this Agreement" to mandatory arbitration. R. 56-1 at Page ID # 1381.

---

[1] Michael Pitts is now deceased and is represented in this litigation by his wife, Defendant Carolyn B. Pitts, the personal representative of his estate.

The parties also agreed that "in all respects" the PSA would be governed by the laws of Michigan and that any dispute would be subject to the jurisdiction and venue of the State of Michigan. *Id.* at Page ID # 1382.

Ultimately, the relationship between Plaintiffs and Defendants deteriorated, resulting in Aqualucid withdrawing from the CRADA in 2008. Aqualucid first filed a complaint in Texas state court against Zeta and Mr. Pitts on April 29, 2008, based on the claims at issue in this case.[2] Neither party raised the arbitration agreement at any time during the pendency of the first case. The Texas case was dismissed without prejudice in November 2008. Six years later, Plaintiffs filed a complaint in the United States District Court for the Western District of Michigan, alleging numerous claims for breach of contract, tortious interference, intellectual property infringement, federal false designation of origin and unfair competition, claims under the Lanham Act, trade secret infringement, RICO violations, conspiracy to violate RICO, violations of the Michigan Consumer Protection Act, and breach of fiduciary duty and care, as well as various counts alleging fraud, unjust enrichment, conversion, and civil conspiracy. Defendants initially responded with a motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue, based on Zeta and the Pitts' common residence of Arizona. In response to Defendants' motion to dismiss, Plaintiffs relied on the forum selection clause in the PSA, designating Michigan as the venue for claims related to the PSA. Over two years after the motion to dismiss was fully briefed, the district court issued an order and opinion granting in part and denying in part the motion. In denying the motion as to Plaintiffs' claims against Zeta and Mr. Pitts, the court noted that the PSA—including the forum-selection clause—governed the action.

---

[2] Aqualucid's first suit was joined by a second company not party to the present suit.

The district court then ordered Defendants to file an answer within 21 days. On November 9, 2016, Defendants filed an answer, a motion to dismiss under Rule 12(c), and a motion to stay discovery. Relevant to this appeal, none of these filings raised Defendants' arbitration rights under the PSA. In lieu of responding to the Rule 12(c) motion, Plaintiffs sought leave to amend their complaint, which the district court granted. The district court then amended the briefing schedule *sua sponte* and ordered that, due to the unusual posture of the case, Defendants must first answer Plaintiffs' amended complaint prior to filing a renewed Rule 12(c) motion because Defendants "may not raise the [failure to state a claim] argument through a successive pre-answer motion." R. 55 at Page ID # 1315-16. Accordingly, the district court ordered Defendants to answer Plaintiffs' amended complaint by December 21, 2016, and to file a renewed Rule 12(c) motion by December 28, 2016. Defendants filed their answer to the amended complaint on December 21, 2016, which did not raise an arbitration defense. In the renewed Rule 12(c) motion, also filed December 28, 2016, Defendants raised for the first time a defense that all Plaintiffs' claims were subject to the arbitration agreement in the PSA. At this stage, although the case had been pending for over two years, no discovery had been conducted due to the amended complaint and the case remained in early stages of litigation.

The district court held a hearing on the Rule 12(c) motion on January 30, 2017. Following argument, the district court found in favor of Defendants in a bench ruling. The district court found that it had previously ruled that the PSA was the "operative document for purposes of this litigation." R. 72 at Page ID # 1912. Based on that finding, the court determined that Defendants had not breached the arbitration clause and did not waive its enforcement by the delay in raising the issue. In finding that Defendants did not waive the issue of arbitration, the court noted that the passage of time was "in large measure . . . a result of the

[c]ourt's inability to address the matter on a more timely basis." *Id.* at Page ID # 1915. The district court also noted in the alternative that the first motion to dismiss strategically waived only jurisdictional issues and that Plaintiffs had not shown actual prejudice from Defendants' delay. The district court further concluded that all claims were related to the PSA and thus subject to the binding arbitration agreement. Plaintiffs appealed.

## II.

The Court reviews de novo the district court's grant of judgment on the pleadings under Rule 12(c). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). We will uphold the grant of a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (quotation omitted).

## III.

Plaintiffs argue that judgment on the pleadings was improper because the district court should not have enforced the PSA's arbitration clause as a matter of law. Plaintiffs contend that the arbitration clause is invalid, that Defendants have waived their right to arbitrate, that Defendants breached the agreement by refusing to arbitrate, and, finally, that some of Plaintiffs' claims fall outside the scope of the PSA and are thus not subject to the arbitration agreement.

As an initial matter, Plaintiffs' challenge to the enforceability of the arbitration clause based on their broader fraud claims is misplaced. "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first

instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). Plaintiffs challenge the enforceability of the PSA based on a "fraud in the inducement" claim. Thus, it is within the purview of an arbitrator, not federal courts, to determine whether the entire contract would be enforceable. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 575 (6th Cir. 2003). Here, the fraud in the inducement claim is not specific to the arbitration clause, and, thus, it was proper for the district court to decline to consider the PSA's broader enforceability prior to considering whether arbitration was proper. *See id.* ("[I]f there was a fraud that 'goes to the "making" of the agreement to arbitrate,' then a federal court may adjudicate[.]" (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04)).

A.

The primary issue on appeal is whether Defendants waived their rights to enforce the arbitration agreement in the PSA by failing to raise it earlier in the litigation. A party waives its right to arbitrate by "engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Hurley v. Deutsche Bank Trust Co.*, 610 F.3d 334, 338 (6th Cir. 2010) (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003)). Both elements must be found to establish waiver. *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 828 (6th Cir. 2015). This Court assumes a position of deference to arbitration agreements, however: "Because of the presumption in favor of arbitration under the Federal Arbitration Act, we will not lightly infer a party's waiver of its right to arbitration." *Hurley*, 610 F.3d at 338 (citing *O.J. Distrib., Inc.*, 340 F.3d at 355).

It is on the second prong that Plaintiffs' waiver argument fails. There are many ways to establish prejudice, such as showing that a party waited until a statute of limitations expired to invoke arbitration, *see O.J. Distrib., Inc.*, 340 F.3d at 358, or showing harm to a party due to lengthy delays and costly discovery, *see Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 720-21 (6th Cir. 2012). Although there was significant delay in this litigation before Defendants asserted their arbitration defense, the lion's share of that delay was not caused by either party. At oral argument, Plaintiffs could not quantify any prejudice incurred or point to any time or resources exhausted that would not be transferrable to the arbitration process. *Cf. Johnson Assocs.*, 680 F.3d at 720 (finding prejudice where eight-month delay, numerous scheduling motions, and discovery were not transferrable to arbitration). Without discovery or any significant advancement in the litigation, Plaintiffs likely "wasted relatively few resources on unnecessary litigation" due to Defendants' delay. *Shy*, 781 F.3d at 830. Absent a showing of prejudice to Plaintiffs, there can be no waiver by Defendants.

## B.

Plaintiffs contend in the alternative that Defendants breached the arbitration clause of the PSA by refusing to arbitrate, and, thus, cannot now rely on the PSA as a defense. In support, Plaintiffs rely on emails wherein Aqualucid states that it may "request dispute resolution under the terms of the CRADA." The district court properly rejected this argument. First, the referenced email is not directed at Zeta, but rather at the government. Second, the email references the CRADA, rather than the PSA. Therefore, any argument that Defendants breached the PSA by refusing to arbitrate in response to the email is disingenuous. Moreover, Pitts' email in response in which he stated that he would not participate in a conference call does not constitute a breach because there is "no waiver when a party refuse[s] to arbitrate, prior to the

commencement of litigation, on the grounds that its opponent's claims were substantively weak." *Shy*, 781 F.3d at 829. Thus, Plaintiffs' allegation that Defendants breached the PSA fails.

## C.

Finally, Plaintiffs challenge the scope of the arbitration agreement, contending that some of the claims here are not subject to arbitration because they fall outside the scope of the PSA. We consider whether "an action could be maintained without reference to the contract or relationship at issue," *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003), and here, Plaintiffs' argument falls short. Plaintiffs' claims all reference the PSA, claim breach under the agreement, or rely on the exchange of money and information that was governed by the PSA. Further, Plaintiffs previously argued that all the claims at issue in this litigation are governed by Michigan law, relying on the forum selection clause within the PSA. Plaintiffs' reliance on the PSA as the governing contract of the litigation supports a conclusion that the PSA controls all issues raised in the litigation. Thus, the district court correctly concluded that Plaintiffs' claims fall within the scope of the PSA and would be subject to its binding arbitration agreement, absent waiver.

## IV.

The district court properly dismissed Plaintiffs' claims, which fall under the scope of a binding arbitration agreement. Because Plaintiffs failed to establish prejudice, Defendants did not waive their rights to enforce the arbitration agreement. We **AFFIRM** the judgment of the district court.